## BEHRENS *v.* K. P. RAILWAY CO.

(*Supreme Court of Colorado, December Term, 1880—Error to the Arapa-hoe District Court.*)

NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE—NOT NECESSARILY A QUESTION FOR THE JURY. The general rule that the question of negligence is one of fact and not of law—and not necessarily one of law, even when the facts are undisputed—though supported by authority; yet like all other correct general propositions, can only have a controlling effect in cases where it is rendered applicable by the facts disclosed by the evidence. No case goes to the extent of holding, as a matter of law, that a recovery may be had, where the injured party, knowing the dangers of his position, failed to take any precaution to protect himself from injury.

SAME—DUTY OF COURT TO NONSUIT, WHEN. The general rule is, that to authorize a recovery for damages occasioned by the negligence of another, the plaintiff must have exercised that reasonable degree of care to avoid the injury, which an ordinarily prudent person would have exercised under like circumstances. In such action the plaintiff must make a *prima facie* case in his favor. And where it affirmatively appears from his own evidence that the want of due prudence upon his part was the proximate cause of the injury complained of, it becomes the duty of the court, upon a motion for a nonsuit, to decide, as a question of law, that the action cannot be maintained.

Whether the question is one for the court or the jury, must be determined by the facts of the particular case. Negligence is in all cases, in a certain sense, a question of fact for the jury; *i. e.,* it is for the jury to determine whether the facts bearing upon the question exist or not. But when the facts are undisputed, or are so clearly proven as to admit of no doubt, it is the duty of the court to apply the law without submitting the question to the jury. This involves no invasion of the province of the jury, nor any infringement of their legitimate functions, any more than when the court passes upon a demurrer to the evidence, or on motions for new trials, upon the ground of want of evidence to sustain the verdict of the jury.

NEGLIGENCE OF DEFENDANT WILL NOT EXCUSE WANT OF PRUDENCE ON THE PART OF PLAINTIFF. That the defendant was guilty of negligence, will not authorize recovery by a plaintiff, who failed to excercise ordinary prudence, and in consequence of such failure, was injured. The plaintiff being an employee in the yard of the railroad company, his duties requiring him to cross the track, where the switch engine was frequently passing, should have looked and listened for the engine before going upon the

track. And the fact that it was the custom to ring the engine bell when passing a squad of workmen, and that on the occasion of the injury this was omitted, and that the engine was running at an unusual rate of speed, though it be negligence on the part of the engineer, yet will not excuse the plaintiff for neglecting to look and listen for the danger, before going upon the track.

BECK, J. The plaintiff in error brought his action in the district court to recover damages for injuries sustained by being struck by one of the defendant's engines while attempting to cross the railroad in the company's track yard in the city of Denver. The plaintiff was in the employ of the defendant, in its track yard, as a repair hand, and had been so employed about six months when the injuries were received. On the day of the accident, he, with six or eight other men, were employed in the yard, in constructing a coal switch at the upper end of the yard, under the direction of one Adam White, as foreman. About ten o'clock in the forenoon, plaintiff and others were ordered by the foreman to carry some blocks of wood from the south to the north side of the track, at a point about one thousand feet east of the company's depot. An engine was then, and had been for some time previous thereto, engaged in switching cars in the yard, and was passing up and down the track quite frequently. Plaintiff, without taking the precaution to look along the track to see if the engine was approaching, and without listening for its approach, picked up a block of wood, lying from six to eight feet from the track, placed it upon his left shoulder, and, in attempting to cross the track, was struck by the engine. The block was six or seven feet long, twelve inches wide, and about six inches thick. Owing to the size and shape of this block, and the position in which it was placed upon the shoulder, it obstructed the plaintiff's view along the track toward the depot as he faced the track. The engine came from the direction of the depot with a train of cars attached, and was running at the rate of about ten miles per hour. The usual rate of speed allowed in the yard was about six miles per hour. It was customary to ring the bell when passing a squad of men on the track, but, on this occasion, no signal was given. The track was straight and almost level from where the men were at work to the depot, a distance of about one thousand feet, and the engine could have been seen the whole distance, if plaintiff had looked for it. The engine

and train, running at the speed of ten miles per hour, could have been heard that morning a distance of half a mile. The plaintiff neither saw nor heard the train until he was struck, although his eyesight and hearing were both good.

Upon the conclusion of the testimony on part of the plaintiff at the trial, a motion to nonsuit him was sustained by the court.

The main question to be considered is, whether the plaintiff was entitled to have had his case submitted to a jury, upon the facts and circumstances detailed by him and his witnesses. For the purpose of this inquiry, we assume the facts to be as sworn to by these witnesses.

Counsel for plaintiff claim that the questions of defendant's negligence and of the supposed contributory negligence of the plaintiff, are questions of fact, depending upon inferences to be deduced from a variety of circumstances, in regard to which there is room for a fair difference of opinion between intelligent and upright men, for which reasons, they contend that these questions should have been submitted to the jury. In this connection they cite the following rules of law, viz.: That, as a general rule, the question of negligence is a question of fact, and not of law. When the facts are undisputed, the question of negligence is not necessarily one of law. These legal propositions are supported by authority, but, like all other correct legal propositions, they can only have a controlling effect in cases where they are rendered applicable by the state of facts disclosed by the evidence; and from a careful examination and consideration of the testimony in this case, we are of opinion that the first proposition, viz.: that the questions of negligence involved depend upon inferences to be deduced from a variety of circumstances, in regard to which there is room for a fair difference of opinion between intelligent and upright men, cannot be sustained.

In the numerous cases to which the court has been referred by the counsel of the respective parties, no case goes to the extent of holding, as matter of law, that a recovery may be had where the injured party, knowing the dangers of his position, failed to take any precautions to protect himself from injury. The doctrine of all the cases is, that if a plaintiff, so circumstanced, might have avoided the injury by the exercise of ordinary care, he cannot recover, although the defendant was negligent. The

47

general rule is, that to authorize a recovery for damages occasioned by the negligence of another, the plaintiff must have exercised that reasonable degree of care to avoid the injury which an ordinarily prudent person would have exercised under like circumstances.

In this case the plaintiff was engaged in an employment fraught with danger. He was crossing and re-crossing a railroad track, upon which an engine was frequently passing up and down, switching cars. There were no obstructions to prevent the plaintiff from seeing the engine in ample time to have kept out of its way, and he might have heard the noise of the engine and the cars approaching before they came near enough to have endangered him. Through mere inattention and carelessness he neither saw nor heard them. Without either looking along the track, or listening for the approach of the engine, he shouldered his block of wood and stepped upon the track directly in front of it. Neither the order to carry the blocks, nor the nature of the employment gave him a right of way as against the company's engines and cars; the nature of his employment affords no excuse for his reckless conduct. While it was the duty of the engineer to have rung the bell, as a signal to the workmen that the engine was coming, it was the duty of the latter to have been watchful and upon their guard against surprise. Failing to exercise any precaution whatever under circumstances where the exercise of ordinary and reasonable prudence would have saved the plaintiff from harm, in the absence of testimony that the injury was wilfully and wantonly inflicted, the negligence of the defendant will not warrant a recovery. Shearman & Redfield on Negligence, Secs. 25–42; *Gonzales* v. *N. Y. & Harlem R. R. Co.*, 38 N. Y., 440; *Kelly* v. *Hendrie*, 26 Mich., 255; *Dickey and Wife* v. *Maine Tel. Co.*, 43 Me., 492; *Brown* v. *European & N. A. Rwy. Co.*, 58 Me., 384; *Prideaux and Wife* v. *The City of Mineral Point*, 43 Wis., 524.

In actions of this character it is incumbent upon the plaintiff to make out a *prima facie* case in his favor, showing that the damages claimed by him resulted from the negligence of the defendant. And where it affirmatively appears from his own evidence that the want of due prudence upon his part was the proximate cause of the injury complained of, it becomes the duty of the court, upon a motion made for nonsuit, to decide as a question of

law, that the action cannot be maintained.   In *Ernst* v. *Hudson River R. R. Co.*, 35 N. Y., 41, it was said that a nonsuit should always be granted where the proof is so clear as to warrant the assumption in good faith, that if the question were submitted to the jury, it would find that the culpable negligence of the plaintiff contributed to the injury.

We are referred to page 47 of this opinion as announcing a contrary doctrine.   On that page we find the following proposition:  "What constitutes negligence in a particular case, is generally a question for the jury, and not for the court, because negligence is want of ordinary care."   This proposition is credited to the opinion in *North Pa. R. R. Co.* v. *Hilman*, 49 Pa. St., 60, in regard to which the New York court observes:  "These authorities are not in conflict with those which hold that in certain cases the courts rule the question as one of law, as where the evidence so clearly shows the want of prudence and discretion that there can be nothing for the jury to pass upon."

In *Barton* v. *St. Louis & Iron Mt. R. R. Co.*, 52 Mo., p. 258, this subject is considered, and the rule laid down by that court to determine when the question is one of law for the court, or of fact for the jury, is thus stated:  "Whether it is a question for the court or the jury must be determined by the facts of the particular case.   Negligence is in all cases, in a certain sense, a question of fact for the jury; that is, it is for the jnry to determine whether the facts bearing upon the question exist, or not.   But when the facts are undisputed, or are so clearly proved as to admit of no doubt, it is the duty of the court to apply the law without submitting the question to the jury.   This involves no invasion of the province of the jury, nor any infringement of their legitimate functions, no more than when the court passes upon a demurrer to the evidence, or on motions for new trials upon the ground of the want of any evidence to sustain the verdict of a jury."

Counsel for plaintiff in error quote from the opinion in *Detroit & Mil. R. R. Co.* v. *Van Steinberg*, 17 Mich., p. 122, the following sentence:  "It is a mistake, therefore, to say, as is sometimes said, that when the facts are undisputed the question of negligence is necessarily of law."   The next sentence is:   "This is generally true only of that class of cases where a party has failed in the performance of a clear legal duty."

Upon another page of the same opinion, it is said: "There are, nevertheless, cases in which it has been held proper for the court to take the question altogether away from the jury and decide it as one of law. It is generally held, and is, I think, the correct doctrine, that it is incumbent on the plaintiff to show that the injury of which he complains was caused by the negligence of the defendant, and that it did not arise from his own negligence or want of skill. He takes it upon himself to prove both, and he does not recover if he was negligent, because it cannot be said that the defendant's negligence has caused an injury which would not have happened but for his own want of due care. When, therefore, the plaintiff offers no evidence that he was in the exercise of care, but, on the contrary, the whole evidence on which his case rests shows that he was wanting in due prudence, the court, it is held, may rightfully instruct the jury, as a matter of law, that the action cannot be maintained."

In *Langhoff, admir.,* v. *the Mil. & Pr. du Ch. Ry. Co.,* 19 Wis., 497, it is held, that when the conclusion from the evidence is fairly debatable, or rests in doubt, the question of negligence is always for the jury; but when there is an entire absence of evidence tending to establish the case, or where the negligence of the party injured or killed is affirmatively and clearly proven by the plaintiff, so as to admit of no doubt or controversy, a nonsuit may properly be ordered.

It is claimed that plaintiff in error was misled and thrown off his guard by the failure of defendant's servants to ring the bell of the engine, as they were accustomed to do, and on account of the unusual rate of speed at which the train was running. For these reasons, it is argued that plaintiff was not guilty of a want of ordinary care and prudence.

The authorities cited in support of this view of the case are *Shearman and Redfield on Negligence,* Sec. 28; *the K. P. R. R. Co.* v. *Brady,* 17 Kan., 380; *Pa. R. R. Co.* v. *Ogier,* 35 Pa. St., 60; *Ernst* v. *Hudson River R. R. Co.,* 35 N. Y., 9-28, and 1 Macq. H. L., 748, which could not be found. The first authority cited lays down the rule, that "If the defendant has, by his own act, thrown the plaintiff off his guard, and given him good reason to believe that vigilance was not needed, the lack of vigilance on the part of the plaintiff is no bar to his claim, especially if the defendant has done so by means of positive misrepresentations." It would

require very liberal construction of this rule to extend it to the facts of the case before us, so as to authorize a recovery. To say that a repair hand in the track yard of a railroad company, where cars are being switched, and the switch engine is constantly moving hither and thither, has good reason to believe that vigilance is not needed, because the engine usually runs at a certain rate of speed, and it is customary to ring the bell when it approaches the workmen, is a proposition we cannot indorse. It would be equivalent to saying that the employee may close his ears to every other sound than that of the bell; that he may with impunity walk upon the track with his eyes closed if the bell be not ringing, and, if he receives an injury from a moving engine, he may recover, especially if the engine was running at a greater speed than usual. An application of the rule cited to the facts of this case would dispense with the rule requiring the exercise of reasonable care and prudence in almost every conceivable case involving the element of contributory negligence. The other authorities cited are equally wide of the mark. The doctrine of the case in 17 Kansas is, that all reasonably prudent men, in the transaction of their own affairs, make some preparation for the negligence of others, as well as for accidents, and holds, that since all men know that even the most prudent are sometimes negligent, they should be required to anticipate that average amount of negligence which must, in the very nature of things, be expected to transpire. In that case, the court held that the question, whether the plaintiff had exercised due care, was left in doubt by the testimony, and it was held that it should have been submitted to the jury.

The case of *Pa. R. R. Co.* v. *Ogier*, was an action brought by a widow to recover damages against the railroad company for the negligence of its servants, which, it was alleged, resulted in the killing of her husband. He was attempting to drive across the railroad upon a public highway. The view along the track, in the direction the train was coming, was obstructed by a high bluff. The highway descended a steep hill to the crossing. There was a break in the face of the hill, at a point eighty-four feet from the crossing, where travellers were accustomed to stop their horses and listen for the whistle of the engine and the rattling of the cars before driving over. The deceased halted his horse at this spot and listened, but hearing nothing, remarked to his trav-

eling companion, "its all right," and trotted his horse gently down to the crossing, where he was struck by the train and killed. It was held to be the duty of the company to give a signal of the approach of a train to a road crossing, at such time and in such manner as to be a timely and sufficient warning to passengers upon the highway. The testimony was conflicting as to whether the engine whistle was sounded. It was not controverted that the deceased halted at the point named upon the hillside, but there was some testimony that he might have seen the train approaching after driving down the hill and before attempting to cross, by the exercise of proper vigilance; but whether he could have seen it in time to have prevented the catastrophe, was uncertain.

The jury was instructed, and it was held to have been correct, that if the negligence which occasioned the collision was on the part of the railroad, the company was liable; if on the part of the deceased, no action could be maintained; or if there was mutual negligence, if both parties were negligent, and the collision occurred for the want of proper care and prudence on the part of both, the action could not be sustained. The facts in that case are wholly dissimilar to those in the case at bar. The view of the track was obstructed; there was a horse to manage; a considerable degree of precaution was taken by the injured party to prevent the accident; both sight and hearing were exercised, and the testimony was conflicting upon material points. None of these circumstances exist in the present case.

Similar to the preceding case, in many respects, is the next case cited. *Ernst* v. *Hudson River R. R. Co.*

The plaintiff's husband, as in the Pennsylvania case, was killed while attempting to cross a railroad at a public crossing. This crossing was at the company's station in a village. Deceased was driving a pair of horses attached to a sleigh, and attempted to cross the track to a ferry on the opposite side. It was a flag station, and the uniform practice of the company for years had been, to post a man with a flag upon the track when a moving train came near enough on either side the station to make the crossing dangerous. If the train was to stop at the station, he exhibited a white flag; if it was to pass without stopping, he exhibited a red flag. Deceased was accustomed to travel the highway, and was familiar with this custom. A statute of the state, with which he was also familiar, and the requirements of which

had always been observed by the company, required engineers of
moving trains to give alarm signals upon approaching the cross-
ings of all public highways, whenever they came within eighty
rods of a crossing. Deceased had stopped at a hotel in the vil-
lage to warm himself before driving over the railroad to the ferry.
The distance from the hotel to the crossing was 112½ feet.
Trains from the north come into the station on a sharp curve,
and owing to certain obstructions, could be seen at but one point
between the hotel and station, and there for a distance of thirty-
six rods only. The court say, in speaking of the evidence, that
when deceased started from the hotel to drive to the ferry, he
looked north along the track, the direction from which the train
came, but did not see it, for the reason it was not in view; that
he listened for the whistle and the bell, but heard neither, for the
reason that no signal was given. He looked to the station for a
flag, but no flag was exhibited, and the absence of these custom-
ary signals of danger assured him that no engine was in motion
within eighty rods of the crossing. Thus assured, and unable to
see or hear any warning of danger, he drove to the crossing,
when a train dashed around the curve at a speed of thirty-five or
forty miles an hour, collided with his team and sleigh, and killed
him. The court held these facts to have been fairly established
by the evidence, but the testimony being very conflicting, it was
very properly held that the case should have been submitted to
the jury.

The rule of law established for this case and similiar cases is,
"The citizen who upon a public highway, approaches a railway
track, and can neither see nor hear any indication of a moving
train, is not chargable in law with negligence for assuming that
there is no car sufficiently near to make the crossing dangerous."
This rule does not dispense, however, with the precaution of
looking and listening for a train. It does not therefore aid the
case of plaintiff in error. And in respect to the facts, it is diffi-
cult to perceive in what respect they are analagous to the case
under review. Certainly not in the obstructions to the view; the
statute of the state; the speed of the train; the curve in the
road; nor in the efforts of the injured party to discover by the
exercise of sight and hearing whether a train was coming.

It is true there was an absence of the usual signals of dan-
ger; but it was at a public crossing in a village, where the prac-

tice to exhibit these signals was uniform, and they were relied upon by the community. But the distinguishing feature between the two cases is, that in the one case, efforts were made to ascertain whether a train was coming, which were ineffectual. In the other case no efforts were made, but if made they would have proved effectual.

The opinion of the court, in *Detroit & Michigan R. R. Co.* v. *Van Steinburg*, announces the same general rules and principles of decision applicable to cases of this character, as do the foregoing authorities, and to this extent is in harmony with the current of judicial opinions upon the subject of negligence. It must be conceded, however, that the facts in that case bear a strong analogy to the facts in the case at bar. In neither case did the injured party act, as it seems to us, with reasonable care or prudence. The criticism of the associate Justice, Campbell, in that case, upon the application of the law to the facts, expresses our views upon that portion of the opinion. The Judge says: "So long as there is any possible conflict as to whether his case is made out, the plaintiff has a clear right to go to the jury. But when upon his own case, as presented by himself, and as assumed for this purpose to be entirely true, he shows no cause of action, the effect of the facts so admitted is a question of law, and a party may require a charge as to their legal effect. I think this doctrine has never been questioned anywhere. In *Pa. Mining Co.* v. *Brady*, 16 Mich., 322, this doctrine was fully applied, and I do not understand the principle to admit of a doubt."

Again, after reviewing the facts, he says: "It seems to me that if, under such circumstances, a person is not required to look upon a railroad track before attempting to cross it, there is no available precaution which the law can exact of a man of sound mind for his own preservation." Judge Cooley, in *Mich. Cent. R. R. Co.* v. *Campau*, 35 Mich., 468, commenting upon the conduct of a man who was walking upon the railroad track in the city of Detroit at a point where there are five parallel tracks side by side, and near to where two streets cross the tracks, who, failing to look behind him, was struck by an engine and injured, used the following language: "When, under such circumstances, a person places himself upon a railroad track, with an approaching engine in plain sight, and without even taking the precaution of looking behind him, it is impossible, in speaking of his con-

duct, to characterize it by anything short of recklessness.   If the plaintiff can recover in a case like this, it is plain that the negligence of the injured party must be held immaterial in any conceivable case.   We think the court below should have instructed the jury that the plaintiff could not recover."

That case may be distinguished from the one now under consideration by the fact, that the injured party in this case was in the employ of the railroad company, and had a right to be on the company's grounds, whereas the plaintiff in that case, not being within the limits of a public street, had no such legal right. But the fact that the latter was a trespasser gave the railroad company no license to run its engine over him.   It imposed upon him a greater degree of vigilance.   He was required, under the circumstances, to exercise more than ordinary care and caution to avoid injury; whereas the plaintiff in this case was only required to exercise ordinary care and caution for his own protection.   Neither of them exercised any degree of care or caution whatever.   Both proved, and relied upon the facts for recovery, that the engine was running at greater speed than usual, and that the engine bell was not rung.   This was not enough.   Both were guilty of contributory negligence, which was the proximate cause of their injuries; hence both were without remedy.

The doctrines and rules of law laid down in all the foregoing cases, when applied to the conceded facts of the case under review, fully sustain the action of the district court in giving judgment of nonsuit.

The judgment must be affirmed.

*Judgment affirmed.*

CHIEF JUSTICE ELBERT being absent, did not sit in this case.

*Stallcup & Luthe*, for plaintiffs in error.
*Willard Teller*, for defendant in error.