## DENVER & RIO GRANDE RAILROAD v. RYAN.

1. NEGLIGENCE, TO DISREGARD MUNICIPAL ORDINANCES.—Municipal ordinances requiring the ringing of the locomotive bell whenever a steam engine is approaching or crossing a public street, and requiring the presence of a flagman at important crossings, to the end that people may be suitably and seasonably warned of the approach of railroad trains, are reasonable and proper regulations; and failure by a railway company to observe such an ordinance is negligence.

2. NEGLIGENCE, NOT TO LOOK AND LISTEN.—It is negligence and carelessness for a person to go, stand, or be upon the track of a railroad without keeping watch both ways for trains; also, it is the duty of a person going upon a railroad track to look and listen for the approach of trains and observe the surroundings, and a failure so to do is negligence.

3. NEGLIGENCE, BURDEN OF PROOF.—In an action for negligence the plaintiff is not entitled to recover unless the negligence of the defendant be affirmatively established by a preponderance of the evidence.

4. CONTRIBUTORY NEGLIGENCE, BURDEN OF PROOF.—Where a defendant relies upon the contributory negligence of the plaintiff as a defense, such contributory negligence must be shown by a preponderance of the evidence or the defense will be unavailing.

5. OBJECTIONS TO INSTRUCTIONS, REASONABLE AND NECESSARY.— While the code dispenses with the necessity of taking *exceptions* to the giving, refusing, or modifying instructions, it does not do away with the reason or necessity for making *objections* in some appropriate way to instructions in such time and manner as to give the trial court an opportunity to correct the same if found erroneous.

6. INSTRUCTIONS, WHEN NOT GROUND FOR REVERSAL.—If an instruction be given at the request of the defeated party, or if the same be not prejudicial to such party, it is not ground for reversal even if erroneous.

*Appeal from District Court of Arapahoe County.*

THIS action was brought by Mary Ryan, plaintiff below, to recover damages for the death of her husband Patrick Ryan. In her complaint she alleges that on September 17, 1889, her husband was run over and killed by an engine and tender of the defendant The Denver & Rio Grande Railroad

Company, and that his death was so occasioned by the negligence of the defendant in operating its railway train at the intersection of Larimer and Sixth streets in the city of Denver. The action is founded upon the act of March 7, 1877—a statute so familiar that it need not be quoted at length. 1 Mills' Annotated Statutes, 1003.

The following ordinances of the city of Denver were set forth in the complaint and shown to be in force at the time of the accident:

"It shall be the duty of the engineer, or other person in charge of any locomotive engine within the city of Denver, on approaching any public crossing, street or highway, to ring the locomotive bell sufficiently loud to warn all persons of the approach of such locomotive engine, and shall continue to ring such bell until such locomotive engine and train of cars shall have cleared such crossing. For every violation of this section, the offender shall, upon conviction, be fined in a sum not exceeding one hundred dollars for each and every offence."

"All railroad companies whose tracks cross Larimer, Holliday and Seventh streets shall be required to keep a flagman at said crossings, whose duty it shall be to warn people of the approach of trains by waving a red flag at the time of the approach of any train or engine, so as to fully protect the public in their persons and property."

The plaintiff recovered a verdict and judgment. The defendant brings this appeal.

Messrs. WOLCOTT & VAILE and H. F. MAY, for appellant.

Messrs. SULLIVAN & MAY and S. L. CARPENTER, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The assignments of error sought to be maintained on this appeal relate mainly to the instructions given, refused and modified. Of these in the reverse order.

1. Railway companies engaged in propelling locomotive engines and trains through large cities and thickly settled towns are bound to exercise all reasonable care and diligence to avoid injury to persons traveling upon the public streets intersected by such railroads. The care and diligence should be proportionate to the increased dangers and risks occasioned by such occupation of the public streets. In addition to the diligence which the common law exacts in such cases, local statutory regulations may be resorted to for the better protection of the public safety. Municipal ordinances requiring the ringing of the locomotive bell whenever a steam engine is approaching or crossing a public street, and requiring the presence of a flagman at important crossings, to the end that people may be suitably and seasonably warned of the approach of railroad trains, are reasonable and proper regulations; and it is the duty of railroad companies to faithfully observe such ordinances. The district court did not err in modifying defendant's request to charge the jury upon this subject.

The evidence tended to show that Ryan was attempting to cross the public highway diagonally at the intersection of Sixth and Larimer streets at the time he was struck by the engine ; so he might *have been* warned and protected if the bell had been rung, or if the flagman had been present, as the ordinances provide. It was properly left to the jury to determine from the evidence whether the locomotive bell was or was not rung, also, whether the flagman was or was not present at or immediately before the happening of the accident. So, too, the jury were correctly charged that if they were satisfied from the evidence that the defendant company had failed to comply with said ordinances or either of them at the time of the accident that such failure was negligence on the part of the defendant. But it was not in any manner indicated by the charge of the court that such negligence if found to exist was conclusive of the defendant's liability in the action. Proof of such negligence would not suffice to make the defendant liable unless it was also shown

to be the proximate cause of the death of the plaintiff's husband Patrick Ryan, and not then, if the evidence also showed that Ryan's own negligence contributed to cause his death. Such was in substance the charge of the court. Shearman & Redfield on Negligence, sec. 13; Wharton on Negligence, sec. 793; 2 Thompson on Negligence, 1232; *Behrens v. K. P. Ry. Co.*, 5 Colo. 403; *Jackson, Receiver, D. & R. G. Ry. Co. v. Crilly*, 16 Colo. 103; *Briggs et al. v. N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 30; *Seimers v. Elsen*, 54 Cala. 413; *Bott v. Pratt*, 33 Minn. 323.

While the law is thus stringent in imposing duties and responsibilities upon railroad companies, it is not less exacting in its requirements of individuals, or natural persons. The learned judge who presided at the trial very properly charged the jury that, " as a matter of law it is negligence and carelessness for a person to go, stand, or be upon the track of a railroad without keeping watch both ways for trains ; " and further, that it was the duty of Ryan in going upon the track of the defendant company " to look and listen for the approach of trains and observe the surroundings," and that if he failed so to do, it was negligence on his part. *Holmes v. Colo. Cent. R. R. Co.*, 5 Colo. 197, 516; *Fletcher v. Fitchburg R. R.*, 149 Mass. 132; *Railroad Company v. Houston*, 93 U. S. 702; *Aiken v. Penn. R. R. Co.*, 130 Pa. St. 380; *Kennedy v. D. I. P. & P. Ry. Co.*, 10 Colo. 495.

2. The defendant's counsel requested the court to instruct the jury to the effect, that the burden of proof devolved upon the plaintiff to show affirmatively that the killing of Ryan was caused by the negligence of the defendant, and, also, that the burden of proof was upon plaintiff to show affirmatively that the accident which caused Ryan's death was not the result of contributory negligence or want of reasonable care and caution on his part; and that if plaintiff failed to thus prove either of said facts the jury must find for defendant. The refusal of the court to give such instruction is assigned for error.

Upon the first proposition embraced in the instructions

thus prayed, there is no controversy. It is well established that in a case of this kind the plaintiff is not entitled to recover unless the negligence of the defendant be affirmatively established by a preponderance of the evidence. Upon principle, it would seem that there should be no controversy as to the second proposition embraced in said instruction ; but unfortunately there is great conflict of authority upon the subject. 2 Thompson on Negligence, 1175. We shall not undertake to reconcile conflicting decisions ; but will briefly state our own views ; and for convenience will use the term, *plaintiff*, as in a case where the action is brought in the name of the party injured.

To our minds it seems plain, that there is no essential difference between the negligence of a defendant which may render him liable in an action of this kind, and the contributory negligence of a plaintiff which may relieve from such liability. The very phrase, *contributory negligence*, implies that the latter is of the same intrinsic nature and *contributes* to cause the same effect as the former. In the absence of evidence direct or circumstantial the law never presumes any party to have been guilty of negligence. On the contrary, it presumes every one to have been diligent, or free from negligence, until negligence is affirmatively shown. This presumption of diligence, or of freedom from negligence, attends both plaintiff and defendant. Hence, to warrant a verdict against the defendant *on the ground of his negligence*, the law requires that his negligence shall be affirmatively shown by a preponderance of the evidence ; and in like manner, to warrant a verdict against the plaintiff *on the ground of his contributory negligence* the law requires that his contributory negligence shall be affirmatively shown by a preponderance of the evidence. On the one side the negligence of the defendant is relied on as the gist of the action ; on the other side the contributory negligence of the plaintiff is relied on as the gist of the defense.

It is true, the complaint in an action for negligence usually contains the averment that the plaintiff, *without any fault or*

*negligence on his part,* was injured by reason of the negligence of the defendant. In consequence of this negative averment it has been supposed that the plaintiff must offer some affirmative evidence of the absence of negligence on his part in the first instance. But this does not follow. The negative averment, even if necessary—a point we do not decide—serves substantially as a plea of not guilty to any countercharge of contributory negligence which may be made by defendant. In the absence of evidence of defendant's negligence the defendant is saved from defeat. So in the absence of evidence of plaintiff's contributory negligence the plaintiff is saved from defeat on that ground. Perhaps the matter may be stated more clearly and logically thus: As the absence of evidence tending to show defendant's negligence leaves the charge of negligence unsustained against defendant, so the absence of evidence tending to show plaintiff's contributory negligence leaves the countercharge of contributory negligence unsustained against the plaintiff.

It sometimes happens that evidence tending to show contributory negligence on the part of plaintiff may be elicited from his own witnesses when giving their testimony in chief. In such case, unless such evidence be contradicted, or rebutted by counter evidence tending to show plaintiff's diligence, or freedom from negligence, he should, of course, suffer defeat, either by nonsuit, or by the verdict of the jury. But this does not affect the correctness of the rule, that contributory negligence, the same as any other negligence, is a matter to be proved, and that in the absence of evidence it is not to be presumed. Hence, where a defendant relies upon the contributory negligence of the plaintiff as a defense, whether the averment in respect thereto appear negatively in the complaint or affirmatively in the answer, such contributory negligence must be shown by a preponderance of the evidence or the defense will be unavailing. In general, from whatever source evidences of negligence or of contributory negligence may come, they are to be considered and weighed together, and the same quantum of proof will be

required to establish one as the other. As the last part of the instruction requested by defendant as above stated was contrary to the views here expressed, it was not error to refuse it. *K. P. Ry. Co. v. Twombly, Adm'x,* 3 Colo. 129; *Wall v. Livesay,* 6 Colo. 465; *City of Denver v. Dunsmore,* 7 Colo. 340; *Lord v. Pueblo S. & R. Co.,* 12 Colo. 393.

3. From the record it appears that no exception, objection, or suggestion of error of any kind, was made at the trial in respect to the instructions given. We need not, therefore, consider the assignments of error based thereon. We are aware that the Code, section 387, dispenses with the necessity of taking *exceptions* to the giving, refusing, or modifying instructions. The mere formal reservation of an exception by the defeated party was doubtless considered unimportant and liable to be omitted through inadvertence, and so was dispensed with. But the statute does not do away with the reason or necessity for making *objections* in some appropriate way to instructions in such time and manner as to give the trial court an opportunity to correct the same if found erroneous. Any judge in the hurry of a *nisi prius* trial is liable to err unless aided by the vigilance of counsel. From time immemorial it has been a well recognized and most salutary rule of the common law, that if counsel neglect to object or to point out errors occurring at the trial in such time and manner as will give opportunity for their correction, they will not, in general, be heard to complain of such errors in a court of review. This rule is so reasonable and so essential to the administration of justice that we cannot believe it could have been the intent of the legislature to overthrow it altogether. Any other rule would enable a party to sit silently by, knowing some error had been committed against his interest of which perhaps no other person was aware at the time, and thus take the chances of a verdict in his favor, while having the sure means of setting aside the verdict if it happened to be against him. The law in this jurisdiction never has permitted, and it is to be hoped that it never will permit such experiments with judicial proceedings. There will

always be enough important questions to review in the appellate courts if parties are required to be vigilant to prevent error in the trial courts.    2 Thompson on Trials, sec. 2394 ; *Union Min. Co. v. Rocky Mt. Nat. Bk.*, 2 Colo. 248 ; *McFeters v. Pierson*, 15 Colo. 207 ; *Wray v. Carpenter*, 16 Colo. 271.

Where instructions are prayed and either refused or modified the foregoing observations are not so clearly applicable. It is gratifying in the present case, that the instructions given seem to be full and complete and in all substantial respects fair toward the defeated party.    The record clearly shows that the instruction concerning the measure of damages was given at defendant's request.    This furnishes an additional reason why the assignment of error based thereon cannot be considered.    In view of the amount of the verdict the instruction, even if erroneous, which we do not intimate, could not well be considered prejudicial to defendant.    A careful examination of the record discloses no substantial or reversible error.    The evidence being conflicting upon the material matters in controversy, this court cannot properly disturb the verdict.    The judgment, therefore, must be affirmed.

*Affirmed.*