Bell, J.
The record shows that on December 12th, 1907, Harry E. Good, of Alamosa, Colorado, a train dispatcher for the Denver & Bio Grande Bailroad Company, presented to an agent of The Mutual Life Insurance Company of New York, appellant herein, an application in writing for a $2,000 life insurance policy, which was issued to him, and, among many other things, stated in his application that his father died at the age of 33 years from an injury received in a runaway accident, and that there was no suspicion of tuberculosis or consumption as a cause of his death, and further stated in his application that “I am insured in other companies and associations, as follows : None and in no others. ’ ’ The assured died August 23rd, 1909, and the company refused payment of the policy, assigning as its reason the alleged false answers of the assured in his application concerning his family history and other insurance. Action was brought on the policy and resulted in a verdict for the plaintiff, Venita A. Good, widow of the assured, and appellee herein, in the sum of $2,000 and costs.
Among the defenses set up by the appellant company, it alleged that, at and prior to the time of making application for the policy sued upon, the assured was affected with pulmonary tuberculosis, which fact he failed to make known to it, either in his application or to its medical examiner, and that he subsequently died from the disease. At the trial the appellee testified that the assured died after a five-minute illness from an unknown cause. Doctor Herbert Van Sands, a witness for the appellant, testified that he examined the assured, about 18 months previous to his death, on behalf of the company, for the policy in question, and that the assured was at that time *206 in good health, and not affected with the disease; that the assured consulted him subsequently, February 12th, 1908, complaining of a tapeworm, and that, when he saw the assured three or four days before his death, he was blue and emaciated. It would seem that the witness issued a certificate on the death of the assured in which he stated the cause of death as pulmonary tuberculosis, but he testified that he could not recollect having’ issued such a certificate, and, if he did issue it, it was based upon his general information or knowledge of the deceased, and not upon any examination which he made of him, and, without such an examination neither he nor any other physician could determine whether he had tuberculosis. The appellant insists that the assured’s father was Joseph Bist, who died of tuberculosis at the age of 24 years, and that the assured misrepresented this fact in his application.
There seems to be no doubt that Joseph Bist was notoriously affected with tuberculosis from the time he was 21- years of age until he died at the age of 24. The evidence shows that he died after a lingering illness of about three years, .the last four or five months of which he was confined to his bed, and that his mother also died of the same type of tuberculosis. This evidence is not disputed, and the real question involved in this phase of the case is whether Joseph Bist was the father of the assured. A brief synopsis of the evidence on this point is that one Ellen Burns gave birth to the assured about three years before Joseph Bist died. About the time of the birth of the child, Barbara Mauch, Bist’s half-sister, and by vocation a nurse, gave him money and he left Lafayefte, Indiana, because Ellen Burns accused him of being the father of her child, and he stayed away three or four months. Lydia M. Gurley, a sister of Ellen Burns, in her deposition testified that Joseph Bist was the father of the assured. However, this was a mere *207 conclusion of the witness, and was not evidence. Charles Ashby, another son of Ellen Burns, and an alleged half-brother of the assured, between one and two years younger, testified that he never knew Joseph Bist, but that “I knew from'my mother that'his náme (the'assured’s father) was Joseph Bist. ’ ’ He produced a family bible containing the following entry under the heading-“Births”: “Harry E. Bist. Born February 8th, 1881,” and further testified that the assured was known as Harry E. Bist until he was about six years of age, when his mother married Samuel Good, and thereafter he was known- as Harry E. Good. There is no evidence in the abstract showing thát Ellen Burns was ever married until about six years after the birth of the assured, and we infer from the evidence before ns that the assnréd was not conceived nor born in wedlock, or that his mother ever sustained a common-law or ceremonial marriage relation with Joseph Bist, hence there was and is no presumption of law that Joseph Bist was the father of the assured, and the burden of proof rested upon the appellant to establish this fact by a preponderance of the evidence.
Under the very nature of things, no one but'the mother can positively identify the father of her offspring, and it may be impossible for her to do so. In that part of India where most of the female children are destroyed at birth, and each woman lives with from three to six husbands, it is conceded by both husbands and wives that it is impossible to identify the paternity of children, hence, there is no affection or close sympathy existing between husbands and children, such as is recognized where monogamous marriages prevail. ít is equally impossible to identify the fatherhood of a child where the sex privileges of the mother are extended to more than one male at or about the time of conception. Jurors are permitted to use their common knowledge and observa *208 tions in life, in fact judges could not prevent them from doing so if they would, in determining the weight of evidence admitted for their consideration. "When it is shown that a child is conceived through unlawful sex indulgence or commerce, without any appearance of deception, seduction or other extenuating circumstances, jurors are not likely to hold one so unlawfully conceived as the child of any particular male person after his 'lips are closed in death, and where the truth of a charge of paternity of an illegitimate child would work a heavy loss upon a widowed wife, unless the proof be quite direct, or the circumstances such as to make the evidence convincing.
The jury probably considered the written statements of the assured in his application, though not made under oath, showing that he occupied the important position of train dispatcher, and that his father died at the age of 33 years from injuries sustained in a runaway accident, while the evidence shows that Joseph Eist died at the age of 24 years of a slow, wasting type of consumption. It was probably impossible for the jury to reconcile these statements as both referring to Joseph Eist. Barbara Mauch, a half-sister • of Joseph Eist, who took care of him through his long illness, swore that she did not know the assured either personally or by reputation. There was no one to whom Ellen Burns was so likely to give the true surname of the father of her child as to the child itself. The history of court proceedings often show that mothers of unlawfully conceived children, for various reasons, charge different male persons of being the father of the same child, and for these and other reasons it becomes the duty of courts and juries to closely scrutinize the evidence before placing the fatherhood of a child upon any accused person under such circumstances as are shown in this record.
One of the leading authorities on evidence states the ' rule as follows:
*209 “It is hardly necessary to add that, while hearsay declarations as to pedigree * * * are admissible, and often valuable in the absence of other evidence, it must be borne in mind that such declarations are subject to many of the objections which may be urged against hearsay evidence, and hence are to be received with considerable caution. Family pride may have tempted the declarant to allege or deny the relationship; and, although persons may be presumed to know the facts connected with their own family history, yet, as is well known, this presumption is often contrary to the fact.” — Jones on Evidence, 2nd Ed., sec. 317.
Contrary to the general practices of those who are regarded a's reputable witnesses, the half-brother and aunt of the assured seemed to have been very willing witnesses for the appellant in its endeavor to avoid payment of the policy to the assured’s wife. That may have been, if we put the proper interpretation on the evidence, a scrupulous endeavor to willingly tell the whole- truth on the part of the witnesses. It was, however, for the jury, and not for us, to say whether this was in pursuance of a purpose of the sister and son of Ellen Burns to save her good name as much as possible. We think, under the character of the evidence and the circumstances, it was for the jury-, and not for this court, to say whether the appellant showed by a preponderance of the evidence that Joseph Rist was the father of the assured. They must have found this issue in favor of the appellee.
The next serious question urged by the appellant for a reversal is that the assured made a false representation as to his having other insurance when he made his application to the appellant for a policy. The statement complained'of is as follows: “I am insured in other companies and associations, as follows: None and in no others.”
It appears fr,om the evidence that, at the time the *210 answer was given the assured held a policy in the Prudential Insurance Company of America for $500. This question, with the materiality of the statement, was submitted to the jury on instruction number 14, given at request -of appellant, which reads as follows:
“If you believe from the evidence that said Harry E. Good at the time of making the application for said policy held a policy of insurance on his life in the Prudential Insurance Company of America, and was in fact then insured, and if you further believe that the defendant company would not have issued the policy of insurance sued upon had said company been truthfully informed in regard to said other insurance, your verdict will be for the defendant.”
The jury must have found that the defendant company would have issued the policy sued upon if it had known of the existence of the policy held by the assured in the Prudential Insurance' Company.
At an early day insurance companies concluded that, from time to time, persons, who were without means or embarrassed in their affairs or burdened with impaired health, obtained large insurance upon their lives and resorted to self-destruction largely for the purpose of bestowing comfort upon their families; hence, life insurance companies generally interrogate all applicants as to other insurance, and the courts generally recognize the rights of such companies to provide for forfeitures, if the application is made a part of the policy and the answers are false. However, some of the courts and many of the legislatures have limited such rights of forfeiture to cases where juries find that the policy would not have been issued if the companies had known the truth. This case was tried upon the assumption that the jury must find that the appellant would not have issued the policy of insurance sued upon had the company been truthfully informed in regard to the existence of the other policy.
*211 This question was submitted to the jury on instruction number 14 above quoted, tendered by appellant without objection on the part of the appellee, and, under these conditions, we do not understand that the appellant is now at-liberty to question the finding of the jury on this phase of the case.
In L. D. G. M. Co. v. A. G. M. Co., 30 Colo., 431-435, 71 Pac., 389, the supreme court said:
“The court adopted their (appellant’s) theory in answering the question of the jury, and, whether right or wrong, is wholly immaterial, because appellant .is bound by the theory which its counsel advocated, and which the court adopted.” — Witcher v. Gibson, 15 Colo. App., 163-174, 175, 61 Pac., 192; De St. Aubin v. Marshall Field Co., 27 Colo., 414, 62 Pac., 199; Denver, etc., R. R. v. Ryan, 17 Colo., 98-104,105, 28 Pac., 79; Denver v. Stein, 25 Colo., 125-128, 53 Pac., 283; D. & R. G. R. R. Co. v. Peterson, 30 Colo., 77-87, 69 Pac., 578, 97 Am. St. Rep., 76; Mounts v. Apt, 51 Colo., 497, 119 Pac., 150.
In Pacific Mutual Life Insurance Co. v. Van Fleet, 47 Colo., 401-406, 107 Pac., 1089, the statement of the assured was, ‘ ‘T have never received or been refused compensation for accidental injuries or sickness, escept as herein stated.” The applicant made no statement of what he received. The evidence showed he had been insured in a mutual association, had been injured and received compensation for the injury, and the company asked a forfeiture because of the alleged false statement. The supreme court said:
“In what we have already said, we have assumed with defendant, that this answer is equivalent to a statement by the assured that he had never received compensation from an insurance company for an injury. The alleged false answer, on its face, is imperfect and incomplete. It suggests that -compensation might have been received.”
*212 The statement of the assured in the case before us, vis.: I am insured in other companies and associations, as follows: None and in no others,” is confusing and liable to make the applicant innocently give a wrong answer. If a direct interrogatory had been propounded to him, as: “Have you a policy in any other insurance company?” he'could not have been misled thereby. The policy in the Prudential Insurance Company was small, and we see no reason why the assured should have given a false, answer, especially since the application stated that an untruthful answer would avoid the policy. However, it is not necessary to decide, and we do' not decide, this question or base our decision herein on this point.
It would seem that the policy sued upon did not specifically make the application a part thereof, and many well-considered cases hold under these conditions that the answer in the application as to other insurance is not a warranty, but a representation. The supreme court of Oklahoma, in considering this point on a policy similar to the one before us, issued by the same company to one Morgan, held that such answers are but representations. — Mutual Life Insurance Company of New York v. Morgan (Okl.), 135 Pac., 279-281, and cases cited; Northwestern Life Insurance Co. v. Tietze, 16 Colo. App., 205210, 64 Pac., 773; Security Mut. Life Ins. Co. v. Webb et al., 106 Fed., 808, 45 C. C. A., 648, 55 L. R. A., 122; Webb et al. v. Bankers Life Ins. Co., 19 Colo. App., 456-458, 76 Pac., 738.
Appellant’s counsel say that:
“The legal effect of such conduct (making false statements as to other insurance) depends upon whether the statement is regarded as a warranty or a mere representation ; but in view of the glaring errors in the record, we do not propose to take up the time of the court in discussing this particular statement.”
Howevei', for the disposition of this case, it is not *213 necessary to decide whether the statement as to other insurance is a warranty or a representation, and, as the question was not argued, we prefer to base our opinion on other grounds.
Appellant insists that the trial court abused its discretion in not granting an application for a continuance because of the absence of appellant’s subpoenaed witness, Doctor Freiberger. The affidavit for a continuance set forth in detail what this witness would testify to if present, which included extensive treatment of assured for tuberculosis. Counsel for appellee admitted that, if the witness were present, he would testify to the facts set forth in the affidavit, subject, however, to all legal exceptions as to the competency of such matters as evidence. The court overruled the application under section 177, Mills’ Annotated Code. We do not think the court'abused its discretion in denying the application. At the proper time the appellant offered the entire statement of facts as set out in the affidavit as evidence. Appellee objected to the offer, alleging that it was a confidential communication between doctor and patient. The court cautiously advised counsel that it did not care to pass upon it as a whole,- and showed evidence of wanting assistance. Counsel for appellant, however, seemed to direct their entire efforts to having the court’s ruling include all material parts of the affidavit, and in saving an exception to the exclusion thereof. No intimation was made that some small part of the long affidavit was not included within the purview of section 8072, Mills’ Annotated Statutes, Revised, 1912, which reads:
“A physician or surgeon authorized to practice his profession under the laws of this state, or any other state, shall not, without the* consent of his patient, be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient.”
*214 In the case of C. F. & I. Co. v. Cummings, 8 Colo. App., 541-551, 46 Pac., 875, the court of appeals construed this statute, and held evidence inadmissible, whenever the relation of physician and patient is shown to exist, as to any information which the physician may have acquired by attending the patient. The statute was declared to be as broad as that of any state to which the court’s attention had been called, and excluded an examination of the surgeon as' to any information which he had acquired while attending the patient, whether the information was deduced from statements or gathered from his professional or surgical examination. The court said:
“It is common knowledge that the eye and finger of the attending surgeon is vastly more expert in locating cause dr trouble than the tongue of the most astute patient. The authorities hold that no matter how the information may be acquired, whether it comes to the surgeon in the shape of oral statements, or by reason of his examination, he cannot be interrogated respecting it,” and cites in support of its position Freel v. Market St. Cable Ry. Co., 97 Cal., 40, 31 Pac., 730; Gartside v. Conn. Mut. L. Ins. Co., 76 Mo., 446, 43 Am. Rep., 765; Briggs v. Briggs, 20 Mich., 34; Dilleber v. Home Life Ins. Co., 69 N. Y., 256, 25 Am. Rep., 182; Masonic Mut. Ben. Assn. v. Beck, 77 Ind., 203, 40 Am. Rep., 295; Colo. Midland Ry. Co. v. McGarry, 41 Colo., 398-404, 405, 92 Pac., 915.
Counsel for appellant insist in this court, under the decisions of 'the state of New York, that the trial court should have admitted that part of the statement in the affidavit showing that the physician attended upon the patient, the length of time the disease continued, and the fact that the patient was actually treated. The affidavit states that Good “consulted” the physician, and there is no statement therein as to attendance, length of time of sickness, etc. We think, however, that these mat *215 ters were not specifically presented to tlie trial court, and it was not called upon to pass upon them. It was the duty of counsel, if any parts of the mass of facts set up in tlie affidavit were competent, to have specifically called the attention of the court to them. The question asked by tlie medical examiner was “state every physician whom you have consulted in the last five years.” Answer: “Doctor Herman, Logansport, Indiana.” The trial court had no suggestion from counsel that any part of the affidavit was competent to disprove the answer as given, and was reluctant to. pass upon any particular part of the affidavit without the aid of counsel. Appellee insisted that the entire affidavit was incompetent, and counsel for appellant gave no intimation that the parts now relied upon were competent for any purpose. Probably no one connected with the trial had a real doubt as to the incompetency of all the facts stated, unless it was counsel for the appellant, who now rely on portions of the affidavit and urge that they were competent to prove, at least, the allegation of consultation, and possibly a few minor matters. We think counsel should have been as fair to the trial court as they are to the court of review, and have specified such matters as they thought were competent for any particular purposes when the affidavit en masse was excluded, and thus have given the trial court an opportunity to pass upon them, as is now done in this court.
In. the case of Denver etc. R. R. v. Ryan, 17 Colo., 98-104-105, 28 Pac., 79, the supreme court said:
“Any judge in the hurry of a nisi prius trial is liable to err unless aided by the vigilance of counsel. From time immemorial it has been a well-recognized and most salutary rule of the common law, that if counsel neglect to object or point out errors occurring at the trial in such time and manner as will give opportunity for their correction, they will not, in general, be heard to complain *216 of such errors in a court of review. This rule is so reasonable and so essential to the administration of justice that we cannot believe that it could have been the intention of the legislature to overthrow it altogether. Any other rule would enable a party to sit silently by, knowing some error had been committed against his interest of which perhaps no other person was aware at the time, and thus take the chances of a verdict in his favor, while having the sure means of setting aside the verdict if it happened to be against him. The law in this jurisdiction never has permitted, and it is to be hoped that it never will permit, such experiments with judicial proceedings. There will always be enough important questions for review in the appellate courts if parties are required to be vigilant to prevent error in the trial courts.” — 2 Thompson on Trials, sec. 2394; Union Min. Co. v. Rocky Mt. Nat. Bk., 2 Colo., 248; McFeters v. Pierson, 15 Colo., 207, 24 Pac., 1076, 22 Am. St. Rep., 388; Wray v. Carpenter, 16 Colo, 271, 27 Pac., 248, 25 Am. St. Rep., 265; L. D. G. M. Co. v. A. G. M. Co., 30 Colo., 431-435, 71 Pac., 389.
Counsel for appellant urge its assignment 12, i. e.:
“The instructions of the court were conflicting and tended to confuse, or may have confused, the jury.”
This charge is quite true; but appellant tendered the conflicting instructions, the appellee did not object to them, and they were submitted to the jury at appellant’s request. Counsel for appellant stated to the court that some of their instructions so requested were framed upon the theory of a warranty and others upon the theory of a representation, and that, when they tendered both, they expected the court to refuse to give either one or the other. There being no objection, however, the court gave both on the assumption that one party tendered them and the other did not object, and, when appellant’s counsel intimated that they would except to some of the instructions given at their own request, the court replied:
*217 Decided November 10, A. D. 1913.
Rehearing denied December 8, A. D. 1913.
“I will withdraw any that you except to # # * . If you want to withdraw them, you may do so.”
However, counsel did not except to or offer to withdraw any of them, and thereupon the case was submitted to the jury on the conflicting instructions. Appellants now complain as follows:
“By instructions Nos. 14, 15 and 16 the jury were told the untrue answers and statements of Good did not amount to the dignity of warranties, hut were mere representations, and could not he availed of by the company unless the jury believed it relied on such statements in issuing the policy.”
Instruction 2, which considered the statements and answers in the application as warranties, and instructions 14, 15 and 16, which considered them as representations, were all requested by the appellant and submitted to the jury without objection, and the appellant cannot now be heard to complain of the instructions given at its request. — L. D. G. M. Co. v. A. G. M. Co., 30 Colo., 431-435, 71 Pac., 389; Whitcher v. Gibson, 15 Colo. App., 163-174-175, 61 Pac., 192; De St. Aubin v. Marshall Field Co., 27 Colo., 414, 62 Pac., 199; Denver v. Stein, 25 Colo., 125-128, 53 Pac., 283; Denver etc. R. R. v. Ryan, 17 Colo., 98-105, 28 Pac., 79; D. & R. G. R. R. Co. v. Peterson, 30 Colo., 77-87, 69 Pac., 578, 97 Am. St. Rep., 76; Mountz v. Apt, 51 Colo., 497, 119 Pac., 150.
Under instructions 14, 15 and 16, the jury was permitted to consider the materiality of the statements and answers made in the application, and, from the nature of its verdict, it is to be presumed that this question was resolved in favor of the appellee.
The judgment is affirmed,