## MITCHELL v. REED ET AL.

1. REVERSAL OF JUDGMENT UNSUPPORTED BY THE EVIDENCE.— A judgment but slightly supported by the evidence, and manifestly against the weight thereof, cannot be permitted to stand.

2. EVIDENCE — ADMISSION OF LIABILITY UNDER ERRONEOUS INFORMA-
   TION.— Where, in an action for the value of two transits, it appears
   that defendant bought out a firm to whom plaintiffs had delivered
   two transits for sale, and that just after the sale defendant, acting
   on information afforded him by one of the clerks of the firm, wrote
   plaintiffs that he had the transits, but afterwards discovered that one
   of the transits belonged to another, to whom he surrendered it, and
   so told plaintiffs, this evidence, the same being neither satisfactorily
   contradicted nor explained, is insufficient to support a judgment
   for plaintiffs for the value of that transit.

*Appeal from Superior Court of Denver.*

Mr. CLARENCE A. LOTT, for appellant.

Mr. S. L. CARPENTER, for appellees.

BISSELL, C.   This action was originally commenced before
a justice to recover the value of two Gurley mountain solar
transits from the appellant, Mitchell.   It was claimed that
they came into his possession at the time he bought the
stock of Alger & Co., to whom they had been antecedently
delivered for sale by Reed Bros.   It has been assigned as
ground for reversal that the judgment of the superior court
rendered upon the appeal to it is manifestly against the
weight of evidence.   This contention appears to be well
based and properly laid.   About certain of the facts essen-
tial to the plaintiffs' recovery there is no dispute.   The Reed
Bros. owned two transits, which were sent to Alger & Co.
for the purposes of sale.   Subsequently the appellant, Mitch-
ell, became the purchaser of Alger & Co.'s stock upon a
lumped sale, without any inventory.   The principal ques-
tion in the court below, as well as in this, is, Did Mitchell
receive the two transits belonging to Reed Bros. at the
time of the purchase from Alger & Co., and was he obli-
gated to account to them for the value?   Originally, as is
evident, he was no party to the transaction.   He had en-
tered into no contract with Reed Bros., and incurred no
liability with reference to the transits, either by virtue of
an original stipulation with the bailors, nor by reason of

anything that occurred as between him and Alger & Co. at the time of his purchase. Under these circumstances, his obligations to Reed Bros. were exceedingly slight, and whatever he may have written, done or said with reference to those two transits is to be construed in the light of these existing relations. The only evidence which was produced by Reed Bros. in support of their claim to recover the value was sundry letters which were written by Mitchell to them concerning the instruments within a very few days subsequent to his purchase. Mitchell seems very early to have discovered that his vendors, Alger & Co., had in their possession at the time of the sale to him sundry instruments, left with them for repairs or sale by various persons who claimed to own them. He seems to have attempted by inquiry to ascertain the facts concerning the ownership of all such instruments, and to have attempted their return to the parties who had the title. In pursuance of these plans he wrote the letters which were offered in evidence, which, in terms, conceded his possession of two instruments belonging to the plaintiffs, offered to dispose of them, and account for the proceeds. One of them was so sold by him, and the price remitted. As to the other, he contends that the letters were written under a mistake, and without full knowledge concerning the fact of the ownership of the instruments. His explanation upon this subject is full, and apparently satisfactory. The court below, however, seems to have proceeded upon the theory that, as the letters were written by Mitchell, and conceded his possession, he was as much bound by them as though he had been a party to the original contract, and therefore in a fashion he was estopped to deny the conclusiveness of their admission. No such effect should be given to those letters. The case demonstrated that the letters were written almost immediately upon the sale in June, 1884; that they were written without any absolute knowledge on the part of Mitchell with reference to the instruments, but were based upon information given to him

by an employee of Alger & Co., and in the execution of an attempt upon his part to deliver the instruments to the persons to whom they belonged. Within a very short time of the writing of the letters, the actual owners of one of the instruments, the Denver & Rio Grande Railroad Company, made claim upon him, and established their title, and he surrendered the instrument, which he had supposed belonged to Reed Bros. This undoubtedly he had a right to do, and the only question is, Was it the instrument belonging to the Reeds? It satisfactorily appears from the evidence that it was not their property. At the time of the sale and purchase referred to, it is shown that there were but three instruments in the stock purchased which would be included within the designation of mountain solar transits. One of them was a Buffenberger, which was subsequently delivered to one Martin; one was a light mountain Gurley, which was sold for the Reeds, who received the proceeds of the sale; and the other was a Gurley, which belonged to the Denver & Rio Grande Railroad Company. This accounts for all of the solar transits belonging to third persons which came into possession of Mitchell by virtue of his purchase from Alger & Co. It is thus evident that his letters were the result of a mistake, and that he should not be held to the same strict responsibility for their contents as would be the rule had they been written by the persons with whom the original contract had been made. These conclusions are very largely supported by the course and conduct of the plaintiffs in the general history of the transaction. One of them made a personal claim upon Mitchell very shortly after the letters had been written, and very directly after they had been advised of the error into which he had fallen. Mr. Mitchell at the time explained the situation and circumstances of the transaction, showed the reason for his mistake, and the basis for his then and present contention. In all these things apparently the plaintiffs acquiesced, for they took no steps for the recovery of the instrument for

nearly three years, and not until after a controversy between the appellant, Mitchell, and one of the principal witnesses for the appellees. These facts and circumstances tend very strongly to support the appellant's position.

Upon the whole record, it is the opinion of this court that the judgment was manifestly against the evidence, and is without support from testimony which is not satisfactorily contradicted and explained. Under these circumstances, however much this court may regret the necessity for a reversal, and whatever may be the pressure of the general rule restricting interference with judgments upon this ground, it is obvious that, in obedience to its convictions, the case must be reversed. The case should be reversed, and remanded for further proceedings.

RICHMOND and REED, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is reversed and the cause remanded for further proceedings.

*Reversed.*