THE BEULAH MARBLE COMPANY ET AL. v. MATTICE.

1. CONTRACTS.

An option to purchase real estate which originally is *nudum pactum* cannot be enforced, and may be withdrawn at any time before acceptance or payment of some consideration.

2. STATUTE OF FRAUDS.

It seems that a contract between three persons, not occupying towards each other fiduciary relations, to join in the purchase of land, the title to which is to be taken in the name of the one paying the consideration, to be held for the benefit of all, is within the statute of frauds.

3. APPELLATE PRACTICE—RULE OF DECISION.

To the general rule that an appellate court will not review conflicting evidence with a view to determine its sufficiency to support findings of fact, there are recognized exceptions, as where the finding is the result of bias or prejudice, mistake or misapprehension, or misconception of the legal effect of evidence, or where there is no evidence.

4. WITNESSES.

A person who will offer his testimony as a purchasable commodity, offering or refusing it upon terms most favorable to himself, does not commend himself to any court as worthy of belief.

*Appeal from the District Court of Pueblo County.*

THE appellee Benjamin Mattice, plaintiff below, as the assignee of the rights of Charles E. Collins, brought this action to establish a trust in real estate, and for a decree, based

thereon, awarding him the interest claimed, and also for an accounting, and for general relief. The pleadings are long and the evidence voluminous, but an intelligent understanding of the case and the legal questions involved may be had by a condensed statement of the complaint and the testimony.

It is alleged in the complaint that in the year 1892 a partnership agreement was entered into between Charles E. Collins and Edward C. Betts, the purpose of which was to secure marble deposits, and to buy and sell for profit to themselves lands in which such deposits were supposed to exist. In the prosecution of such partnership business these parties discovered upon a certain quarter section of land in Pueblo county valuable marble deposits, an option to buy which tract, dated November 7, 1893, they secured from George S. Draper, the owner.

Thereupon they proceeded to interest therein David J. Kelley and William H. Kelley, of the city of Denver, resulting in the following agreement of November 9, 1893, of which only the material parts are given:

"That for and in consideration of one dollar and other valuable considerations, receipt of which is hereby acknowledged, the parties of the first part (Collins and Betts) do hereby sell, assign and transfer an undivided one-half interest in and to all their right, title and interest in any and all marble deposits of which they are now in possession, whether by option already secured, or by option that may be secured, or by any other title, to the parties of the second part (the Kelleys) or their assigns, upon the following conditions:

\*    \*    \*    \*    \*    \*    \*    \*

"*Second.* That parties of the second part shall pay such amount as may be demanded as the purchase price of a clear title to a certain one hundred and sixty acres of land (being the same land described in the option hereinafter mentioned) \* \* \* and at the time and place specified in said option when secured, providing the said purchase price shall not exceed the sum of one thousand dollars."

The third clause provides for the payment to Collins and

Betts of one thousand dollars by the Kelleys in four equal payments of $250 each, in one, two, three and four months after date, upon condition that the marble shall be as represented, that is to say :

" Blocks of dimension size can be quarried, and the marble so quarried shall be of a quality and color equal to the block of marble now in the factory of the Denver Onyx and Marble Manufacturing Company in the city of Denver.

" The parties of the second part have full power to enter into possession of all property mentioned in this agreement as soon as the options are secured and shall have the right to take out, quarry and ship marble to the amount of one thousand cubic feet; and it is understood and agreed that the parties of the second part shall pay nothing for the marble so quarried and shipped.

" *Fourth.* It is understood that the possession given is in the nature of a partnership and said possession is held for the parties of the first part, as well as for the parties of the second part, save and except the one thousand cubic feet of marble first quarried and shipped, which is to be the sole property of the parties of the second part.

" *Fifth.* When a clear title to all marble deposits mentioned is secured then each individual party to this agreement shall be entitled to and receive an undivided one-fourth interest in said deposits." * * *

Then follows a provision that when said title is perfected a company is to be organized, to which the land is to be conveyed, and which shall develop the property, the capital stock of which incorporated company is to be issued one fourth thereof to each promoter, all of whom shall deposit sixty per cent of their holdings in the treasury of the company, to be sold for not less than a specified sum, which is to be equally divided between them.   A power of attorney is to be given by the other three to David J. Kelley to carry out the provisions of this agreement.

The complaint further avers that the kind of marble called for by the contract was discovered on this land, and that the

power of attorney was executed as agreed upon ; that under the option, hereinafter referred to, Collins and David J. Kelley entered upon possession of the land and jointly developed it for the benefit of the four persons interested therein.

On November 28, 1893, it is alleged that by and with the consent, knowledge and acquiescence of Betts and Collins and W. H. Kelley, David J. Kelley entered into a new contract with George S. Draper, the owner of the land, for the purchase thereof, the substance of which agreement was that David J. Kelley, for $25.00 cash paid down, got an option to purchase this land for $1,500, $500 of which was to be paid in three months from date, and $1,000 in six months. A further consideration was that the owner was to retain a one tenth interest in the property, to be evidenced either by a quitclaim deed from Kelley, or, at his election, by one tenth of the capital stock of an incorporated company, to which it was contemplated the property would be conveyed.

This option gave to Kelley the right to enter upon and prospect this land for the purpose of determining the quality, variety, and the value generally of the marble deposits supposed to exist therein ; and the payment of the consideration, as therein specified, was in no event to be made unless the result of the development proved satisfactory to Kelley. If it was not satisfactory, the agreement was to be considered void, and no claims were to be preferred by the owner against Kelley for damages by reason of any work done upon the premises, or for any marble taken therefrom ; and any permanent improvements made by him upon the property were to be left for the benefit of the owner.

It is alleged that this new option or contract was taken in the name of the defendant David J. Kelley as a mere matter of convenience, it being the express understanding and agreement between these four parties that David J. Kelley should hold the option as trustee for the use and benefit of all the parties thereto in such proportion as the interest of each entitled him, and that any title that Kelley might

acquire by virtue of this contract, or otherwise, should be held by him as trustee, as aforesaid.

It is then alleged that thereafter David J. Kelley, intending to cheat and defraud Collins of his rights as an equal partner or cotenant in these premises, procured under this contract the execution of a deed from the owner to defendant John Ernest; but that Ernest, before and at the time of the delivery of the deed to him, had full notice of the rights and equities of Collins in these premises, and that Ernest did not pay any part of the purchase price for said lands; but, on the contrary, David J. Kelley advanced and paid the whole thereof.

Then follows an averment that defendant David J. Kelley procured the incorporation of The Beulah Marble Company, to which company he also procured the conveyance by Ernest of this land, which company, charged with notice of plaintiff's equities, now holds the legal title thereto.

It appears from the complaint that no meeting of the company had been held at the time this suit was brought, but that David J. Kelley, assuming to act for said company, had entered into certain contracts with the board of capitol managers of the state of Colorado, for the furnishing of marble from said quarries to be used in the state capitol building; that the defendants having conspired together for the purpose of defrauding the plaintiff, as the assignee of Collins, of his rights and interests in said lands, a temporary restraining order was prayed for to prevent the accomplishment of such purpose, and a decree was asked establishing the rights of plaintiff to the interest in said lands to which, under said contracts, he was entitled, and for general relief.

Upon the filing of the verified complaint, a temporary restraining order, without notice, was issued, restraining the defendants in accordance with the prayer of the complaint. Subsequently, an application to dissolve this order, based upon a pleading in the nature of a general demurrer, was denied.

Separate answers were filed by the different defendants,

those of the Kelleys, the Marble Company and Ernest substantially denying the material allegations of the complaint, the answer of Betts practically admitting all of its allegations, and the answer of Draper alleging no knowledge of, or participation upon his part in, the frauds alleged, and disclaiming any interest in the result of the suit.

Upon the issues thus joined the cause was tried to the court without a jury, and findings of fact sustaining all the material allegations of the complaint were made by the court, except as to the payment by Kelley for the land conveyed to Ernest,—as to which the court refused to pass,—and a decree was entered establishing the trust, and awarding to the plaintiff the ownership of nine fortieths of the entire capital stock of the defendant company, and ordering the directors of the same to issue such stock to the plaintiff, and making this decree an equitable lien against the premises described in the complaint, and enjoining the defendants from removing or extracting any marble from the premises in controversy until the certificates of stock had been issued to the plaintiff as aforesaid.

From this decree the defendants have appealed, and assign numerous errors.

Mr. S. L. Carpenter, Mr. J. R. Dixon and Mr. A. M. Stevenson, for appellants.

Messrs. Waldron & Devine, for appellee.

Mr. Justice Campbell delivered the opinion of the court.

The plaintiff relies upon the proposition that Collins, at the time Kelley got the option of Draper (November 28th), had an equity in the subject-matter of this controversy. If such equity existed, a recovery may be had; otherwise not. From a reading of the complaint it would seem that such equity is claimed, *first*, as arising by operation of law out of the relations created by the contract of November 9th between the Kelley brothers and Collins and Betts, together

with the so-called option contract of November 7th given by Draper to Betts; and, *second*, as the result of an express agreement to that effect entered into between David J. Kelley, representing himself and his brother, and Betts and Collins, at the time the option of November 28th was given. If an agreement, founded upon a sufficient consideration, was made by Kelley with Collins and Betts on November 28th, whereby Kelley was to take and hold the property in controversy as a trustee, proof of that agreement would entitle plaintiff to recover, irrespective of the previous transactions between the parties.

The theory of the plaintiff, however, as developed at the trial and as asserted in argument, cannot be better stated than in the language of his counsel:

" We first show the existence of trust or fiduciary relations between Collins and Betts upon the one hand and the Kelleys on the other by virtue of the partnership or community of interest agreement dated November 9, 1893. This being once established it is entirely competent to show by any subsequent agreement, either verbal or written, any change or modification of the trust relations thus established whenever proof of such subsequent agreements becomes necessary to prevent the perpetration of an actual fraud and deceit, or the taking of an unconscionable advantage by the trustee or other person occupying a fiduciary relation."

From this statement in the brief, as well as from the record, it is plain the plaintiff does not claim that the agreement of November 28th, by which Kelley was to hold as a trustee, was binding because of any consideration from Collins and Betts then passing, or thereafter to be given; but that the acquiring of the property by Kelley, under his contract with Draper of that date, was, by operation of law, for the benefit of the four parties to the agreement of November 9th, as a necessary result of their fiduciary relations then existing. In other words, that the trust has been established, not as the result of an express agreement therefor, but by implica-

tion of law arising when Kelley, as a cotenant or copartner, purchased property for the common business.

In this view it becomes necessary to determine what, if any, were the fiduciary relations between these parties prior to November 28th. The agreement of November 9th is set out in the complaint. The legal effect of the option is not correctly averred therein, and it is given here in full as follows:

"SYRACUSE, N. Y., Nov. 7th, 1893.

"ED C. BETTS, ESQ., Pueblo, Colo.

"*Dear Sir:* — Your favor of the 3d instant at hand and contents noted.

"I will give you an option and with working privileges on lime quarry on the property owned by me in Beulah district, known as the Best ranch, for the sum of $1200 purchase price; said option to be for six months and with the provision that a cash deposit is made as an earnest of $25, which will be the condition of this option being given, to be deposited in the First National Bank to my credit, and then this option to come into effect. Or I will sell this property now for $1000, half cash if closed in twenty days from date.

"There is a kiln on the property which, however, would require some repairs. The payment of $25 would be as a consideration for lime burned during term of six months, which would be yours or assigns, and all improvements in the way of kilns on the property to revert to me in case property is not taken, which gives you six months to take it in, and also to work it, and all lime to be burned and taken away in that time to be yours in consideration of the payment of $25 to be made before this agreement will go into effect, which can be made any time before December 1st, 1893.

"Trust this will meet your approval, as is the best I can do, unless sale made now when I might take $1000, half cash if made before December 1st, 1893.

"I am, yours,

"GEORGE S. DRAPER."

Had this agreement become operative, the parties thereto would not have become copartners, but the relation thereby created would have been a tenancy in common, which, of course, requires of the cotenants good faith towards each other as to all matters affecting the common property. This contract, however, never became operative. It was executory only, always so remained, and no fiduciary relations sprang from it. Before the Kelleys became subject to its provisions, it was incumbent upon Collins and Betts to secure from the owner a valid option to purchase this land for one thousand dollars, in one alternative, or twelve hundred dollars, in the other. A fair interpretation of the contract in this particular is that Collins and Betts were to get such an option as would, among others, give to the Kelleys a reasonable time and ample opportunity to prospect and develop the land with a view to determine its value as a marble deposit before paying any portion of the purchase price.

A casual reading only of the option discloses that in its essential features it falls short of a compliance by Collins and Betts with their agreement. It gave the proposed purchasers no right to prospect for marble, or quarry the same, and gave possession only for the purpose of determining the lime producing qualities of the land. Moreover, if the option had conformed to the agreement, it was not binding upon Draper; Betts paid no consideration therefor, nor did he accept the offer. The Kelleys were not required to secure the option, or to comply with its terms when secured, and there is no pretense that they prevented Collins and Betts from so doing.

The claim that Betts and Collins, under the option, or under the agreement of November 9th, took possession of the Draper lands for the benefit of themselves and associates, avails nothing, for there is nothing in either writing requiring them to take possession; nor was it in any respect a performance, in whole or in part, either of the contract or the option. Hence, this possession was purely voluntary, and conferred no rights which otherwise did not exist.

The option was *nudum pactum*, — could not be enforced; and Draper might, as in fact he did, withdraw it at any time, even before the date fixed for acceptance and payment of the consideration, if meanwhile Betts had not accepted or paid. Betts therefore got no legal interest in the land, or any equity that could be enforced. *Gordon v. Darnell*, 5 Colo. 302; *Frue et al. v. Houghton et al.*, 6 Colo. 318; *Litz et al. v. Goosling et al.*, 93 Ky. 185; s. c., 21 Lawyers' Reps. Ann. 127, and cases cited.

The consideration for which the Kelleys promised to do certain things having failed, their obligations imposed by the contract terminated. Thereafter, in the acquisition of this land, all of the parties might negotiate as strangers to each other, so far as their rights were affected by their previous transactions.

We come now to the agreement of November 28th, whereby David J. Kelley got in his own name the option to buy this land. Whatever be the interest, if any, which Collins and Betts acquired at this time, it depends, not upon any previous transactions between the parties, nor does it arise by operation of law out of any supposed fiduciary relations, for we have shown that such relations did not then exist. That there is no competent evidence of an express trust is conceded; and, in our view of the case, it cannot be successfully contended that this contract of purchase was a renewal of, or a substitution for, the old option. Its terms are quite dissimilar. Under the old option the purchase price for the entire tract was one thousand dollars; under the new it was fifteen hundred dollars for nine tenths of the property; and in other respects there are differences between the two. It can scarcely be conceived in the light of the evidence that any of the parties interested considered Kelley's agreement with Draper as a renewal of the old, or that the old merged into the new option, or that it was merely a substitution for the agreement of November 9th.

Whether a partnership agreement to buy and sell real estate can be proved by parol evidence, or whether, the part-

nership agreement being shown, an agreement between the partners to buy real estate for their joint business can be supported by parol evidence, is not the question here; for the alleged agreement of Kelley to take and hold as a trustee was not an agreement to form a partnership to buy land, nor was it an agreement between him and the other partners to purchase. Such agreements, first mentioned, have been held not to be within the statute of frauds. Wood on Statute of Frauds, sec. 233; Browne on Statute of Frauds, sec. 261, *et seq.* The authorities are collated in the exhaustive opinion of Mr. Commissioner Pattison in *Meagher v. Reed,* 14 Colo. 335, though the decision by the court was not put upon the proposition in question.

If there was any agreement at all, it was a contract between three persons, not occupying towards each other fiduciary relations, to join in the purchase of land, the title of which was to be taken in the name of one who paid the entire consideration, to be held for the benefit of the three in proportion to their respective interests, and such an agreement has been held to be within the statute. 8 Am. & Eng. Ency. of Law, 700, *et seq.;* Browne on Statute of Frauds (5th ed.), sec. 261g; *Parsons v. Phelan,* 134 Mass. 109; *Linscott v. McIntire,* 15 Me. 201; *Dunphy v. Ryan,* 116 U. S. 491.

But this question is not necessary to be determined here, for the vital question, as we consider it, here is: Was there a binding agreement established by parol or written evidence, or both, between David J. Kelley and Collins and Betts, on November 28th, whereby Kelley was to hold the land as a trustee?

An agreement, whether within or without the statute of frauds, must be founded upon a sufficient consideration before a court of equity will enforce it. A careful examination of the record shows that no valuable right or thing was lost or surrendered and that no consideration, either on November 28th, or at any other time, was given or promised by Collins and Betts, or either of them, to Kelley in return

for his promise to take and hold as trustee. That there is no such parol evidence was to be expected, for the theory of the plaintiff (evidently adopted by the trial court) was that, by the mere acquisition upon the part of Kelley of this land during the existence of the alleged fiduciary relations, it was impressed with a trust in favor of his copartners. The general finding that all of the allegations of the plaintiff were established necessarily includes the special finding that Kelley agreed to take and hold as a trustee. But this special finding must have been predicated upon the other fact, assumed as established, that there was a copartnership, or that the relation of tenancy in common existed. But as neither of these assumed facts is established by the evidence, the special finding based thereon, or drawn as an inference therefrom, must fall, for the reason that there is no evidence in the record to sustain it. We are of opinion that the court misconstrued the legal effect of the evidence, and in this respect erred.

In another view of this case, the decree ought not to stand. The general rule is, where there is a substantial conflict in the evidence, an appellate court will not review the same with a view to determine its sufficiency to support the findings of fact of the trial court sitting as a jury. But there are recognized exceptions to this rule, as where the finding is the result of bias or prejudice, mistake or misapprehension, or misconception of the legal effect of the evidence, or where there is no evidence. *Caldwell v. Willey*, 16 Colo. 169; *Mitchell v. Reed*, 16 Colo. 109; *Lamar Co. v. Craddock*, 5 Colo. App. 203; Mills' An. Code, p. 474, *et seq.*, where cases are collected.

Our examination of the entire evidence leads us to the conclusion that this case comes within one of these exceptions, and the findings should be set aside. The findings of fact found in this record probably would not, and certainly ought not, to have been made by the learned trial judge on the character of the testimony given by the witnesses for the plaintiff. A misconception of the true theory of the case,

and a misinterpretation of the effect of the prior agreements between the parties, and these only, can satisfactorily account for the erroneous findings of fact.

We make this observation after reading the testimony of Collins, the principal witness for the plaintiff. A letter written by him to David J. Kelley, while this suit was pending, was introduced in evidence by the defendants, from which it clearly appears that Collins was endeavoring to negotiate with Kelley, either for the suppression of testimony favorable to the plaintiff's case, or was soliciting a bribe for the giving of testimony for the defendants that would defeat a recovery by the plaintiff. Collins acknowledges writing the letter, and his own explanation of the object he had in view renders him altogether unworthy of belief. He was financially embarrassed, and in need of money. He says that his object was to secure an interview with Kelley, then unfold to him the nature of the testimony against him and the other defendants, and upon an agreement to give to Kelley a portion of the interest which he expected to receive in the event of a recovery by the plaintiff, extort from Kelley, on behalf of himself and associates, an offer of compromise, and then hold this offer over the plaintiff, and by suggesting that the plaintiff could recover only by the aid of his testimony, he expected to bring the plaintiff to terms by refusing to testify. A man who will thus make of his testimony a purchasable commodity, offering or refusing it upon terms most favorable to himself, does not commend himself to any court as worthy of belief.

In view of this character of testimony, together with the radical differences between the conditions of the contract of November 9th and those inserted in the contract of November 28th between Draper and Kelley, under which the latter secured this land, coupled with the conceded fact that from this latter date Kelley openly refused to recognize Collins' alleged rights, and considering the transactions of the parties, as shown by the evidence, from an ordinary business standpoint,—and bearing in mind the theory of the trial

court as exhibited in its various rulings,—we are satisfied that the learned judge did not base his finding of a valid agreement by Kelley to hold as a trustee upon the parol evidence, but predicated it upon an unwarranted assumption of proof of the relation of tenancy in common between the parties, which we have decided did not exist.

Our conclusion being that Kelley had, on November 28th, the right to purchase this land for himself, it is immaterial to the plaintiff, as the assignee of Collins, what was thereafter done, either by Kelley, Ernest or the Marble Company, towards the acquisition of the property.

There are other assignments of error that would demand consideration were it not for the matters already determined, which dispose of this appeal. For the reasons stated, the findings of fact lacking support in the evidence, the judgment and decree of the court based thereon are wrong, and are accordingly reversed, and the cause is remanded.

*Reversed.*