[No. 4222.]

THE DENVER AND RIO GRANDE RAILROAD COMPANY v. PETERSON.

1. **Appellate Practice—Jurisdiction—Dismissing Appeal and Redocketing on Error.**

Where a case is taken from a county court to the supreme court by appeal which the supreme court has no jurisdiction to review on appeal, but has jurisdiction to review on error, the appeal will be dismissed and the cause redocketed on error.

2. **Appellate Practice—Evidence—Verdict of Jury.**

Where the verdict of a jury is manifestly against the weight of the evidence, it will be set aside by the appellate court.

3. **Common Carriers—Warehousemen—Liability.**

Where property shipped by a railroad company while awaiting delivery to the consignee was destroyed by fire and there is no dispute as to the evidence the question as to whether the liability of the railroad company was that of a common carrier or only that of a warehouseman is one of law to be determined by the court.

**4. Same—Notice to Consignee.**

Where a consignor ships goods consigned to himself at a point where he does not reside and where he has no agent to represent him he is not entitled to notice of the arrival of the goods.

**5.—Common Carriers—Warehousemen—Liability.**

Where a cart which could have been easily removed, was shipped by a railroad company and immediatly upon its arrival at the point of destination the consignee was notified, and four days after its arrival the cart was destroyed by fire, the liability of the railroad company was that of a warehouseman and not of a common carrier.

**6. Instructions.**

Where an erroneous instruction is given at the request of a party, the party requesting it cannot on appeal complain of the giving of such instruction.

**7. Common Carriers—Warehousemen—Liability—Instructions.**

In an action against a railroad company for property destroyed by fire in its depot while awaiting delivery to the consignee, in determining whether or not plaintiff had ample time to have removed the property the jury is entitled to consider such circumstances as the length of time between the arrival of the goods and the calling for them by plaintiff, and whether or not notice was at once given to plaintiff of the arrival, if such circumstances are in proof.

**8. Same.**

In an action against a railroad company for property destroyed by fire in its possession while awaiting delivery to the consignee, where there is no charge of negligence against the agents or employees of defendant in handling goods intrusted to its care, an instruction submitting the question of the conduct of such agents and employees in handling the goods to the jury is erroneous.

**9. Same.**

The care required of a warehouseman is not affected by his ability to construct and maintain buildings in which goods are to be stored, nor by the value of goods likely to be intrusted to his care.

**10 Negligence—Degrees.**

Degrees of negligence such as slight, ordinary and gross, are not recognized in Colorado and it is erroneous for trial

courts to attempt to make such distinctions in their instructions.

*Error to the County Court of El Paso County.*

Messrs. Wolcott, Vaile & Waterman and Mr. Wm. W. Field, for plaintiff in error.

Messrs. Orr & McKesson, for defendant in error.

Chief Justice Campbell delivered the opinion of the court.

The cause was docketed as an appeal from the county court of El Paso county. This court has jurisdiction to review the judgment by writ of error, but not on appeal. In such circumstances our statute provides that the appeal shall be dismissed and the cause re-docketed on error. Orders so providing are therefore entered.—Mills' Ann. Code, sec. 388 a.

The action was brought by appellee as plaintiff below to recover of the railroad company the sum of $89 on account of the failure by defendant to deliver to the plaintiff a certain hackney cart which defendant received from plaintiff, for the purpose of transporting the same as a common carrier for hire from some point in the east to the city of Colorado Springs. There is no question as to the delivery of the cart by plaintiff to defendant for the purpose designated, and the latter admits that it has never redelivered it to plaintiff. It justifies its failure to do so upon the ground that, through no fault of its own, the cart was destroyed in a fire which burned its freight depot at Colorado Springs in which the cart was stored. The plaintiff alleges that such fire was caused by the negligence of the defendant company. Upon the issues joined there was a judgment for plaintiff for $85, which the defendant has brought here for review.

Numerous errors are assigned, but the argument

is confined to a discussion of the insufficiency of the
evidence to show negligence and to sustain the ver-
dict, to errors in giving and refusing instructions
and to rulings upon the evidence.

The case was begun before a justice of the peace
and afterwards taken to the county court by appeal,
where the judgment here attacked was rendered.
There being no pleadings, the issues involved must
be determined from an examination of the evidence
and the instructions of the court. The plaintiff in his
brief charges defendant with negligence in the fol-
lowing particulars: (a) That the railroad com-
pany negligently allowed inflammable material to ac-
cumulate and remain on its right of way around its
freight depot, and that sparks from one of its engines
reached this material, and set fire to it, which thence
spread to the freight depot, and destroyed the cart.
(b) That it operated one of its locomotives, which,
because not properly equipped or kept in repair,
emitted live sparks in passing the depot, which were
allowed thus negligently to escape from the locomo-
tive and start the fire in question. (c) That its
freight depot and surrounding platforms were negli-
gently constructed so that waste and inflammable
material could and did accumulate under them. (d)
That it negligently failed to provide any reasonable
or adequate means for extinguishing fires in its
freight depot.

And in all of said particulars it was charged that
the defendant did not exercise the ordinary care re-
quired of it in the circumstances of the particular
case, and that such negligence either in whole or in
part, was the direct and proximate cause of the in-
jury to the plaintiff.

1. The most important, in fact the pivotal, ques-
tion in the case grows out of the assignment of the
appellant that the verdict is so manifestly against the

credible and satisfactory evidence as to indicate bias or prejudice on the part of the jury. The established rule in this jurisdiction is that where there is substantial conflict in the testimony, the judgment of the trial court will not be disturbed. To this general rule there are well known exceptions, as illustrated in the following cases: *Rhode v. Steinmetz*, 25 Colo., 308, 315; *Beulah Marble Co. et al. v. Mattice*, 22 Colo., 547, 558; *Mitchell v. Reed, et al.* 16 Colo., 109, a case in which the judgment was reversed upon the same ground as here. See Mills' Ann. Code, p. 474, where a number of similar cases are collected.

One exception is that where the verdict is manifestly against the weight of the evidence, it will be set aside by the appellate tribunal. We think that the case at bar comes under this recognized exception, as the review of the only evidence which tended to establish negligence on the part of the defendant abundantly shows. The plaintiff produced two witnesses, young girls, aged ten and twelve respectively, who were in their home about 400 feet northeast of defendant's depot, in which plaintiff's cart was stored. When the fire began, they were looking out of the window towards the depot. They testified that a few minutes before the fire broke out, locomotive No. 553 passed the freight depot, going in a northerly direction, and one of them testified that it was throwing off a good deal of smoke and she saw sparks of a fiery red color escaping from a small hole about three-quarters of an inch wide in the smokestack. The day was clear and bright, with a strong wind from the southwest, blowing at the rate of about 50 miles an hour. This witness testifies that she did not notice the hole very much at that time, but had noticed it about a week before, when this engine was switching in the yards. There was also testimony by three or

6

four of plaintiff's witnesses that they saw this partic-
ular engine in the yard at that time. Nothing partic-
ularly attracted their attention to it that would tend
to fix in their memory its number. It was merely a
casual observation. Two of them testify that this
engine was one which the defendant company used
in hauling the regular passenger trains between Col-
orado Springs and Manitou, a distance of four or five
miles, and that between trains it was also employed
in switching in the Colorado Springs yard.

Three witnesses for plaintiff were produced who
testified that about two weeks after the fire they made
an examination of this engine at the town of Manitou,
and there discovered, as they say, the hole in its smoke-
stack, to the existence of which, and the escape of
sparks therefrom on the day of the fire, the two little
girls testified. The object of this testimony, of
course, was to show negligence by the company in
failing either properly to equip, or keep in repair, the
smokestack of this particular engine, and that it was
due to its neglect in this respect that the fire occurred,
which resulted in the destruction of plaintiff's cart.
The defendant produced the engineman, the fireman,
and the brakeman of the Manitou passenger train, all
all of whom testified that locomotive No. 553 was not,
on the day of the fire, in use that day, either in the
yards at Colorado Springs, or between there and Man-
itou, but that the locomotive then used was No. 554,
a companion engine of the same size, pattern, and
general appearance. There was not a particle of
evidence that there was any defect of any kind in
locomotive No. 554. Another engineman of the com-
pany was then produced, who testified that upon the
day of the fire he had charge of engine No. 553, and
it was then being used between the City of Denver and
Petersburg, a distance of about seventy miles north
of Colorado Springs, and was there all the day, part

of the time being used to block a crossing on the railroad track over which an attempt was made to build a street railway track. Other witnesses from the general shops of the company at Burnham, a suburb of Denver, also testified to the presence of locomotive 553 upon that particular day at or near Denver. It is a rule of the defendant company to keep a daily record of each locomotive in use upon its road. The engineman is required by these rules to make a daily report as to where he has used his locomotive, and this report is sent to the proper officer at the general shops at Burnham, and is then spread upon the proper records of the company in a book kept for that purpose. These records were produced, and they show that this engine was not in Colorado Springs between the 17th day of September and the 11th day of October, and upon the day of the fire it was at or near Petersburg during the entire day, and at the time the fire actually was raging. Other witnesses, employees of defendant, whose duty it was to know the whereabouts of engines, testified in corroboration of the engineman of locomotive No. 553 that it was then, as he testifies, at or near Denver during the entire day of October 1st.

The question then arises, can the testimony of plaintiff's witnesses, though positive in its character, being that of persons only casually observing the presence of an engine in the Colorado Springs yard, having no particular object in knowing what number it bore, their attention not being particularly attracted to it, and it being no part of their business to keep any trace of it, be said to be of such weight as materially to detract from the weight, credibility, and sufficiency of the evidence produced by the defendant in that behalf. Not only was the testimony of defendant's witnesses given by men who were engaged in its employment, and therefore supposed to be better informed

with reference to this matter, but it was their duty, under the rules of the company, to know what locomotive was in use and where used, and to report that fact to the proper office. In the nature of things, their means of knowledge were much better than those possessed by plaintiff's witnesses. To our minds the fact was established to a moral certainty that locomotive 553 was not at Colorado Springs on the day of the fire, but that its companion No. 554 was the one which the plaintiff's witnesses then saw. When it is considered that the two locomotives were similar in size, appearance and pattern, and that plaintiff's witnesses had frequently seen No. 553 and supposed it was still in use between Colorado Springs and Manitou and in switching in the yards at Colorado Springs, it is not surprising that they mistook the engine they saw for No. 553. The mistake was not unusual or unnatural. It was common.

To this conclusion we come without discrediting in the least the good faith of plaintiff's witnesses, impugning their motives, or questioning their veracity. All reasonable men can readily see how, in the circumstances disclosed by this record, the plaintiff's witnesses honestly were, as they might very naturally be, mistaken in the supposition that they saw locomotive No. 553; and in reaching our conclusion as judges, and as weighing evidence, and ascertaining motive, we can not lay aside our own judgment and experience as men.

The positive conviction left in our minds, after reading this record, is that locomotive No. 553 was at or near Denver at the time of the fire, and that plaintiff's witnesses were in error in saying that it was at Colorado Springs. It might be urged, however, that so far as plaintiff's rights are concerned, it makes no difference whether the sparks which caused the fire escaped from locomotive 554 or 553, and unquestion-

ably this is true.   The prejudice to the defendant, however, does not consist in the mere fact that evidence that one engine rather than another, if either, was the cause of the injury; but when it is considered that the only evidence as to any defect in defendant's locomotive which caused the fire was that concerning 553, and that there was no testimony whatever that there was any defect in No. 554; and when it is further borne in mind that plaintiff produced witnesses to testify to the existence after the fire of a hole in the smokestack of No. 553, from which other witnesses testified they saw live sparks escaping a few minutes before the fire, it becomes very apparent that such testimony as this must have been exceedingly prejudicial, if, in truth, engine 553 was not then at Colorado Springs.   As we read the record, it must have been upon this testimony alone, or very largely, that the jury based its verdict that the defendant was guilty of negligence.   It therefore appears that the evidence on which the jury's verdict must be upheld, if at all, is not legally sufficient for that purpose, and the verdict is manifestly against the weight of the evidence.   It will not do to say that the verdict of the jury might have been the same had plaintiff's witnesses not identified the engine in question as No. 553. The inquiry is not what effect this identification actually had upon the jury, but what effect might it have had, or what effect would it naturally have upon their minds.   We can not say that they disregarded it in arriving at their verdict, but, on the contrary, it having been admitted and undoubtedly commented upon by counsel, we must suppose that it had a strong, if not a controlling, influence with them.   We reverse this judgment upon the ground that the verdict is manifestly against the weight of the credible evidence and to permit the judgment to stand would, in our

judgment, be a wrong to the defendant which no court should tolerate.

The equities of plaintiff's claim are not opposed to this conclusion. The destruction of his property by fire probably would not have occurred had he promptly called for, and taken, it from defendant's possession. And while this neglect on his part does not entirely absolve defendant from liability, and its duty with respect to the care of the cart became that of a warehouseman only, still, when we come to consider the duty of the court in passing on the legal right of the parties, their own conduct as bearing thereupon is not to be overlooked.

2. For the reasons given the judgment must be reversed, but in view of another trial it is necessary to notice some other errors assigned.

The instructions in the main were unusually fair to both sides. The uncontradicted testimony is that plaintiff's cart was received by defendant at Colorado Springs on the 27th day of September, 1898, and in accordance with the custom in such cases, notice of its arrival was at once given by a postal card sent to him through the U. S. mail. The fire occurred on the first day of October following. The plaintiff did not arrive at Colorado Springs until two days after the fire, when, upon going to defendant's depot, he himself first learned of the destruction of his property. It does not appear that he resided in Colorado Springs, or that any one was there to act for him. He was the consignor himself, and if he did not reside at Colorado Springs, or have such agent there, he was not entitled to notice. But that is not important here, for it is clear that due notice was given to him, and that he did not, within a reasonable time after the receipt, and before the destruction of the cart, call for the same. The shipment consisted of a single item, and it would have required but a short time to re-

move the cart from defendant's possession. The evidence not being in dispute, the question whether, in the circumstances, the duty of defendant as a common carrier had ceased, was one of law and, as such, it is clear as a legal proposition, that defendant's liability as a common carrier ceased at the time of the fire, and whatever liability, if any, it was under, was that of a warehouseman only; and so the court, on request, should charge.

In instruction numbered 6, as given by the court, the question as to whether plaintiff had ample time for the removal of his cart was submitted to the jury to be determined by them as a question of fact. Had an instruction been requested by defendant that plaintiff did have ample time, it would have been the duty of the court to give it. The submission by the court of that question to the jury, however, was at defendant's request, and therefore it may not .now be heard to complain. In this instruction the court also told the jury that, in determining what is ample time, it was their duty to take into consideration all the circumstances as they appeared in evidence; but they were not to consider the convenience of the plaintiff in that regard, or the distance that he may have been from the station of the defendant at the time of the arrival of the cart. The defendant now insists that the court committed error in telling the jury to take into consideration all the circumstances appearing in the evidence, for there were no such circumstances. except those which, in the concluding sentence, the court says must not be taken into consideration at all. This criticism is not good. There were other circumstances in proof which the jury were entitled to consider, such as the length of time between the day of the arrival of the cart and the day when plaintiff called for it, and the fact that notice was at once given to him of its arrival.

In the seventh instruction the court in defining the general duty of a warehouseman, among other things, said that it extended to the conduct of his agents and employees in the handling of articles entrusted to his care, and that the jury might also consider the value of the goods with which the warehouseman was likely to be entrusted, and his capacity for burdening himself without unjustifiable expense in the construction and maintenance of buildings in which they are to be stored. The objection to this is said to be that there was no charge of negligence against the agents or employees of the defendant in handling goods entrusted to its care, and that the capacity of a warehouseman is not a test of his liability. In case of another trial it is well to avoid mention of the conduct of defendant's agents and employees in handling goods, for that is not an element in this case; and the capacity of a warehouseman is not the true test of his liability. The care required of a warehouseman is the same, whether he be rich or poor. For, if the fact that he is rich requires of him greater care than if he possessed only moderate means or is poor, then, if he were extremely poor, the care required might be such as practically to amount to nothing; and no one would claim that such an uncertain and sliding rule should be the measure of his liability.

In some of the instructions given there appears to be a recognition by the court of a distinction with respect to different degrees of negligence. Possibly this is accounted for by the fact that defendant in some of its requests committed a like error. While defendant is not for that reason in a position to complain, and, in fact, does not complain, of the distinction thus made by the court, we deem it appropriate to say that the doctrine is firmly established in this jurisdiction that degrees of negligence such as slight,

ordinary, and gross, are not recognized, and trial courts in their instructions should not attempt to make such distinctions. *Western Union Telegraph Co. v. Eyser,* 2 Colo., 141; *Colorado Central Railroad Co. v. Holmes,* 5 Colo., 197; *Denver Consolidated Electric Co. v. Simpson,* 21 Colo., 371; *Denver Tramway Co. v. Reid,* 22 Colo., 349; *Denver & Rio Grande Railroad Co. v. Spencer et al.* 25 Colo., 9.

We do not consider meritorious defendant's objections to the rulings of the trial court in admitting and rejecting evidence.

For the error pointed out, the judgment is reversed, and the cause remanded for a new trial.

*Reversed.*

Mr. JUSTICE STEELE dissents.