[No. 5120.]
[No. 2704 C. A.]

SHULZE, DOING BUSINESS AS WILLIAM SHULZE & COMPANY, v. SHEA.

1. **Practice in Civil Cases—Contracts—Burden of Proof.**

   Where, in an action on a contract, plaintiff claimed a modification of the original contract, the burden was on him to show such fact.—P. 339.

2. **Practice in Civil Actions—Contracts—Evidence—Sufficiency.**

   In an action on a contract, evidence considered, and deemed insufficient to establish a modification of the original contract. —P. 339.

3. **Appellate Practice—Verdict Against Weight of Evidence.**

   While the general rule is, that when there is a substantial conflict of evidence the finding will not be disturbed on appeal, there are well recognized exceptions, as where the finding is the result of bias or prejudice, mistake, or misapprehension, or misconception of the evidence, or where there is none; nor can a judgment but slightly supported by the evidence, and manifestly against its weight, be allowed to stand.—P. 343.

*Appeal from the District Court of Arapahoe County.*
*Hon. Booth M. Malone, Judge.*

Action by William A. Shea against William Shulze, doing business as William Shulze & Co. From a judgment in favor of plaintiff, defendant appeals.               *Reversed.*

Mr. JOHN T. BOTTOM, for appellant.

Messrs. BIXLER, BENNETT & NYE, for appellee.

Mr. JUSTICE GUNTER delivered the opinion of the court:

This was an action to recover commissions upon sales of merchandise made by appellee under employment of appellant. From a verdict and judgment for appellee is this appeal.

Appellant was a woolen merchant, with his place of business in Scotland. The contract under which appellee was employed was created by letter of date August 31, 1893, from appellant to appellee, and appellee's reply thereto of date September 2, 1893. The pertinent part of the contract is disclosed in the following, taken from said letter of appellant:

"We allow you the following commission on your transactions, viz:

"10 (ten per cent.) on your transactions with merchant tailors, and 6½ (six and a half per cent.) on transactions with wholesale clothiers and jobbers.

"The commission comprises all expense (traveling, etc.), and is understood on *amounts paid.* Twice a year, viz., on 30th June and 31st Dec., we render account. In it we credit the commission on *transactions paid* until then, and those transactions which are pending still are carried forward to next account to be treated there according to the *same principle.* We shall be glad to advance to you 50 (fifty pounds) a month during the time you are traveling for ex-

pense, and we shall altogether advance to you willingly to the extent of two thirds of the commission on transactions pending. *On failures of course* no commission is allowed—you will take every possible care to avoid them and deal only with good customers. We want to do only with such.''

The employment thus created continued until November 1st, 1897. If the contract remained during this period as originally made, and as disclosed by the above letters, then appellee is indebted to appellant in a considerable sum for overdrafts on his account, instead of appellant being indebted to appellee as the jury found, and as the court adjudged. It is contended, however, by appellee, that, between December, 1893, and March, 1894, the original contract was changed by letter. Appellee says that between these dates he wrote appellant he would stay in his employment if he would be credited with commissions when goods *were shipped,* otherwise he would not, and that appellant answered by letter, ''all right.'' It will be observed that, according to the original contract, the commissions were to be paid semi-annually on goods sold when paid for.

The only issue of fact so presented was, was the original contract so changed that appellee was to be credited on the goods sold when the sale was made? The burden was upon appellee to prove this change in the written contract.

The only evidence for appellee was his testimony given in the presence of the jury. He testified that, between December 23, 1893, and March, 1894, he wrote appellant demanding this change in the original contract; that appellant replied in a short letter that the requested change was ''all right.'' Appellee was unable to produce a copy of this letter to appellant, or the reply thereto. He testified that his copies of the letter had been destroyed by fire. Al-

though appellee knew from .the time of lodging his complaint herein that his case rested on this modification by letter of the original contract, he made no reasonable effort to secure his letter to appellant, or appellant's reply thereto, if they were in existence. Although the depositions of appellant, his chief clerk, his bookkeeper and shipping clerk were taken, the letters relied upon were not asked for or inquired about by appellee. The depositions were taken in Scotland; the correspondence in question, if in existence, was there; but no request was made to adduce the alleged correspondence until this case was set for trial. Further, the fact that such modification in the contract was made was directly and irreconcilably contradicted by the letters from appellee to appellant during the years 1894 to 1897, inclusive, and by the statements of account sent by appellee to appellant from time to time during said years, and admitted by appellee by letter to be correct. Of these letters and this correspondence, we will speak more in detail later on. The testimony of appellee is directly contradicted by that of appellant, his chief clerk, his bookkeeper, and his shipping clerk. The testimony of appellant and his witnesses is not impaired by cross-examination or otherwise. We have no reason for discrediting it. It is convincingly corroborated by the correspondence and statements of the years mentioned. In May, 1895, appellee wrote appellant:

"The arrangement I have with you, as I understand it, is that I am to receive a commission of 10% on all T. sales and 6½% on all W. sales, and I am to pay all my expenses. * * * I am to be credited with commissions only when the *bills are paid,* but so as to enable me to have money for traveling and living expenses, you are to advance me two-thirds of the commission on pending transactions."

A statement of account was sent by appellant to appellee running to December 31, 1896, and therein commissions are allowed only on goods paid for. For example, on a sale marked "failed," no commission is allowed. Again, where shipments have not been paid for, this notation is entered: "These are not yet paid, and are carried forward to the next account," and no commission at that stage of the account was allowed.

In answer to appellant, enclosing this statement, which shows, as we repeat, that commissions had been allowed only upon sales paid for, appellee writes:

"Your statement of Dec. 31st, 1896, received, and duly noted. I find same correct as far as cash received and *commissions allowed*. I enclose my statement showing several items for which I think that it will be only right and just should be allowed. * * * You state that it is to my interest to look after such matters; but, when you consider that while I am protecting my 10% interest, I am also looking after your 90% interest, and I do not think it just that I should be expected to bear the entire expense besides being put to extra trouble."

The latter part of the letter just quoted refers to charges which appellee asked to be allowed for expenses incurred in obtaining security for certain unpaid accounts, and it will be observed that, in the accounts thus delinquent, he claims to have a 10 per cent. interest, which he would not have if he had been entitled to his commission solely upon shipment or sale; his interest would have ended with the shipment.

This statement, furnished by appellant and referred to in the letter just quoted, showed appellee the debtor of appellant to the extent of $3,671.64. On July 8. 1897, appellee writes appellant:

"I am aware that my account is not in as satisfactory a shape as I would like to have it. The season from July 1st to December 1st, 1896, was not satisfactory to me nor to you, and my illness prevented me from doing as well as I otherwise might have done. All of the money that I received from you from July 1st to December 31st, 1896, I expected to have used for traveling expenses, but, being ill, I was unable to travel, and I had to use part of that money for living expenses. While I expect to get my account in proper shape in the shortest possible time, yet I did not expect to accomplish it entirely this season. From the amount of goods I have sold the season just over, you should ship at least $20,000. My commission on same would not be less than $1,600. Had you sent me the £50 I asked you in my letter of June the 9th to send me, I would then have received from you for the season $1,112.50—as it is, I have only had $970.00, barely enough to pay my traveling expenses for the four months I was on the road. If I deduct $1,112.50 from $1,600.00, it leaves a balance of $487.50 to be applied on my overdrawn account."

This letter evidences the overdrawn state of the account, and that the commissions were not based simply on sales.

And, on July 26, 1897, appellee wrote:

"I will ask you to honor my enclosed request for £100, and you can rest assured that during the coming season I will do my utmost to have my account on December 31 in a much more satisfactory condition than what it is at the present time."

Other letters might be cited showing beyond question that appellant and appellee were still proceeding under the original contract.

To sum up, the original contract was admitted to have been as shown by the letters of August and

September, 1893. According to this contract, it was admitted that appellee was not entitled to recover. The burden was upon appellee to show a modification of this contract, to entitle him to recover. His testimony to such modification was convincingly contradicted by his admitted and unexplained subsequent letters, and other acts as revealed through his conduct with reference to the subsequent statements of account. His testimony was directly contradicted by the testimony of appellant and his witnesses. The credibility of such evidence for appellant was not in any manner impeached. There is no reason for our discrediting it. Such evidence for appellant was convincingly corroborated by the correspondence and statements of account. We think the verdict of the jury was manifestly against the weight of the evidence, and, for that reason, should be reversed. How far the jury were misled by the evidence of appellee being presented by deposition, the fact that appellee was a foreign merchant, appellant a citizen giving his testimony orally in the presence of the jury, we cannot say; but certain it is, the verdict was manifestly against the weight of the evidence and, in such case, it is our duty to set it aside.

The rule applicable is thus well stated in *Rhode v. Steinmetz*, 23 Colo. 308, 315:

"Where there is a substantial conflict in the evidence, the general rule is, that an appellate court will not review it with a view of determining its sufficiency to support the finding of the trial court. But to this rule there are well recognized exceptions, as where the finding is the result of bias or prejudice, mistake or misapprehension, or misconception of the evidence, or where there is none.—*Beulah Marble Co. v. Mattice*, 22 Colo. 547. Nor can a judgment but slightly supported by the evidence, and mani-

festly against its weight, be permitted to stand. —*Mitchell v. Reed,* 16 Colo. 109.''

Judgment reversed.                        *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE MAXWELL concurring.