[No. 4032.]

## MARSHALL V. BARRY.

1. CONTRACTS—*Construed*. Defendant held legal title to a mining claim, in which plaintiff's father was, in equity, entitled to a two-thirds interest. Defendant had employed plaintiff at the monthly wage of $20.00 to make certain improvements thereon, and keep it in condition to be exhibited to those who might come to inspect it with a view to purchase. Plaintiff testified that, subsequently, defendant wrote him that his full monthly wage would be $90.00 and asked if he, plaintiff, would not be satisfied with $20.00, look to his father for the balance; to which plaintiff responded that he would "look to whoever received the money when the property changed hands." *Held* that this correspondence had not the effect to establish, as against defendant, any addition to his previous obligations to plaintiff (238)      ffl

2. APPEALS—*Insufficient Evidence*. Where the evidence is manifestly insufficient to support the judgment it will be reversed. (241)

3. NEW TRIAL—*Newly Discovered Evidence*. The discovery, subsequent to the trial of a stated account in plaintiff's handwriting, showing the balance due him to be much smaller than his recovery. *Held* to entitle defendant to a new trial. (241)

*Error to Denver District Court.* HON. J. W. SHEAFOR, Judge.

MESSRS. DOUD & FOWLER for plaintiff in error.

MR. JOHN R. SMITH and MR. H. B. WOODS for defendant in error.

BELL, J.

J. L. Barry, defendant in error herein and plaintiff below, hereinafter called the plaintiff, brought this action in the District Court of the City and County of Denver against W. M. Marshall, plaintiff in error herein and defendant below, hereinafter called the defendant, to recover the sum of $280, with interest, alleged to be due him as wages for services rendered as engineer at the Kate mine in Boulder County, Colorado, during the months of November and December, 1901, and January and February, 1902. The case was tried to a jury and resulted in a verdict for the plaintiff upon which judgment was entered for the sum of $384 and costs.

During the time for which the claim in suit was made, and for some time previous thereto, the Kate mine stood of record in the name of Marshall, the defendant, he actually

owning but one-third interest in it, however, and the other two-thirds interest therein held in trust by him for Caleb W. Barry, the father of the plaintiff. For a time, the plaintiff worked the property, receiving in consideration for his services all the ore that he obtained therefrom, and thereafter he agreed to and did take care of the property—so as to have and keep it in a condition that its workings might be favorably inspected until such time as a purchaser might be secured—under other arrangements which, it was agreed upon the trial, were entirely expressed in correspondence that passed between him and the defendant herein. The first of this correspondence received in evidence was a letter from the plaintiff to the defendant, dated October 28th, 1901, and reads in part as follows:

"The parties who were here wanted to see the bottom of the shaft very much and I think they would have been pleased at what they found. Now, if you want the water out, I will take it out and keep it out until such a time as you do something with it or work it, providing you get all things needed and furnish me a man until I reach our pump, then I will do all there is to be done myself, you to have wood hauled in and I will cut it and you to give me $20 per month to live on and balance come when mine is sold or it will be made to pay. Now this is a fair offer I want to get it so the place can be shown to a possible buyer. I simply want enough money to buy provisions each month and I will be content to await a better time. I will make the house 12x14. I have all the timbers framed. I will need someone to help tomorrow put up frame. I will pay him out of the $5.00 you sent me. Let me hear from you soon if this meets your approval we ought to start before it storms if at all or the wood will be covered up."

To the above, the defendant replied, October 31st, 1901, in part as follows:

"In regard to taking out the water I have decided to go ahead with it if the cost is not too much. I understand you

to say that you will keep the water out for $20.00 a month until we make a deal of some kind. Will you then look to your father for additional wages or do you expect me to pay more. I understand from your letter that you will look to him when a sale is made.

"I suppose you ought to get up some wood at once and proceed with the small shaft house building. Do not spend much money on this for if we do business we will want a better one.

"I think you sent me a list of repairs but I can't find it. Let me have a full list of them again.

"What will you do about water bucket? Can you use the old one or will you try to borrow a pump? Let me hear from you at once."

The foregoing stated letters comprise the only correspondence between the parties in the matter of their contract received in evidence, and, if we are to consider them alone as the only evidence of the contract, then it is manifest that the plaintiff was to receive but $20 per month from the defendant for his services, until the property could be disposed of or made to pay, and look to his father, who owned two-thirds of the property, for any balance that might be due him. However, the plaintiff testified that on November 19th, 1901, he received another letter from the defendant, which was subsequently destroyed and, therefore, could not be placed in evidence, stating that the full monthly wages of the plaintiff would be $90, and asking if he would not be satisfied with $20 and look to his father for the balance; and to this letter, he, the plaintiff, replied that he would look to whoever received the money when the property changed hands. This correspondence is positively denied by the defendant; but, taking it for what it is worth, it does not establish any obligation upon the defendant other than is shown in his letter of October 31st. The plaintiff, prior to the date of this alleged correspondence, and immediately upon receipt of defendant's letter dated October 31st, entered upon his duties

under the terms stated in the last named letter, and received regularly for four months the sum of $20 from the defendant without any complaint or further demand. When the property was finally transferred to The Copper Ranch Mining and Milling Company, the plaintiff continued to work thereon, in the employ of the company, at agreed wages of $3.00 per day, one-half of which was to be paid to him in cash, and for the other half he was to accept stock in the company.

Caleb W. Barry testified in his son's behalf in part as follows:

"My son told me that Mr. Marshall had hired him to work on the Kate again. He later told me 'he couldn't stand the wages,' and finally I said to him, 'You go on through,' and asked him to stay with the property until we got it disposed of and got into money I will satisfy you. * * * My son told me the twenty dollars a month he was getting was so small he couldn't get along with it. I told him I wanted the property worked, to go ahead and when I got money from the property I would satisfy him. I own two-thirds of the property and Mr. Marshall one-third."

He also testified that he signed an order in words and figures as follows:

"Denver, Colo., April 29th, 1903.

"W. M. Marshall, Denver, Colo.

Pay to J. L. Barry $280.00 due him for labor on Kate mine in years 1901 and 1902 and charge to money due me for my interest in said property, of which you are trustee for my interest.

(Signed)　C. W. BARRY."

Upon this order and the plaintiff's note the defendant loaned him the sum of $75.00, which, he testified, has never been repaid. The order was in the plaintiff's handwriting and, regarding it, the father testified that

"Later he (the plaintiff) comes to me with the order, which he said Mr. Marshall had dictated, or something, or

Mr. Marshall had written himself, and stated if I would sign it Mr. Marshall would give him so much money—$280 I believe, and he needed the money and I didn't care. When I got through I expected to give him money anyhow, whether he earned wages or not. I gave him this order. That is how it came exactly."

The defendant testified in his own behalf to the effect that the agreement between him and the plaintiff was for but $20 per month, as stated in the letters hereinbefore recited, and that no further correspondence or agreement in the matter was had between them, nor was any demand made upon him for any greater amount until about three weeks before the date of the order above set forth, over three years after the amount herein claimed is alleged to have been due.

The burden of proof was upon the plaintiff to establish the indebtedness by a preponderance of the evidence; and, from the matters herein recited, which is substantially all that was offered and received in evidence, we are of the opinion that no such preponderance exists.

It is evident that the plaintiff himself proposed the undertaking, which has resulted in this controversy, and was apparently interested in the care and development of the property through his father's interest therein. The fact that he entered upon the performance of the contract immediately upon receipt of the letter dated October 31st, and continued in the performance of his duties under the terms as therein stated for a period of at least 19 days before having any other alleged understanding in the matter, and the further fact that he received an order from his father for the full amount herein claimed for the identical services rendered, are strong circumstances in favor of the position taken by the defendant at the trial.

If this judgment were allowed to stand, the defendant would be obliged to suffer the entire cost of the care and development of the property during the time in controversy to the great advantage of the plaintiff and his father, notwith-

standing the fact that the defendant owned the smaller interest in the property, and his plain and positive statements to the plaintiff as to extent of his liability in the matter.

The condition of the record does not bring the case within the rule that, where the evidence is conflicting, the court of review will not disturb the verdict; but it is, rather, within the rule expressed in *Mitchell v. Reed, et al.*, 16 Colo. 109, 26 Pac. 342; *Denver, etc., Co. v. Roberts*, 6 Colo. 332-3; *London, etc., Co. v. Findlay*, 6 Colo. 571-3; *La Crosse, etc., Co. v. Scudder*, 4 Colo. 44, and numerous other authorities, that, where the verdict is manifestly against the weight of the evidence, it should and will be set aside.

We are unable to find any reasonable construction that can be placed upon the language of the letters received in evidence and the matters testified to which, under the circumstances of the case, could have justified the jury in rendering a verdict against the defendant.

If the trial court was satisfied with the sufficiency of the evidence, it should, at least, in the interest of justice, have granted the defendant a new trial upon the strength of the after-discovered evidence as set out, under proper allegations, in his amended motion. This after-discovered evidence was a statement of account between the plaintiff and defendant, in the plaintiff's own handwriting, showing a much smaller balance than the amount claimed in suit, and is in words and figures as follows:

"Check from W. M. Marshall. .$20.00
Check from W. M. Marshall. . . 5.00
Check from W. M. Marshall. . . 5.00
Check from W. E. Alexander. . 20.00
Check from W. E. Alexander. . 19.50

                              $69.50

```
J. L. Barry to labor Nov. 1901   $20.00    Bal.   :   $70.00
J. L. Barry to labor Dec. 1901    20.00 .   Bal.       70.00
J. L. Barry to labor Jan. 1902    20.00)    stock to be given
J. L. Barry to labor Feb. 1902    20.00)    for these months
Money expended to Boulder to meet                    $140
  Mr. Alexander and machinery.$ 5.00
```

$85.00

Total received .............$69.50

Balance ...................$15.50"

We are of the opinion, however, that, notwithstanding the weight of this statement, the evidence as presented at the trial is manifestly insufficient to support the verdict, and, therefore, the judgment rendered thereon is hereby reversed and the case remanded with instructions that it be dismissed.

*Reversed and Remanded.*